[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 602 
This is an action on an insurance policy. Before and at the trial the defendant offered to pay $286.47 as a complete discharge of its liability under the policy. The jury returned a verdict for that amount upon which judgment was entered for the plaintiff. The plaintiff moved for a new trial and appeals to this court from the judgment and from the order of the district court denying the motion for a new trial. The facts are as follows: Under date of December 9, 1918, the defendant issued a life insurance policy in the amount of $3,000 insuring the life of Loyd C. Young in favor of the beneficiary Mary Young, his wife. The policy was of the limited payment endowment type and contained the usual provisions requiring the payment of premiums in advance and allowing a grace period of thirty-one days. The annual premium was $116.67, but the policy stipulated that upon written request, approved by the company, the premium might be paid in semi-annual or quarterly installments of $60.66 and $30.90, respectively. All premiums prior to the one which fell due on December 9, 1924, had been paid on a semi-annual basis, some having been paid after the date fixed in premium notes which had been taken in payment. The insured had utilized the loan provision of the policy, as evidenced by a loan agreement of May 27, 1924, under which he had borrowed $309.33 due December 9, 1924. Under the loan arrangement the policy was deposited with the insured. On December 21, 1924, the insured wrote to the company as follows:
"Enclosed please find my dividend notice to be applied as reduction *Page 603 
of premium. I also want to extend the premium for 60 days from Jan. 9th, the grace period. Thanking you in advance.
Yours truly,
Loyd C. Young."
In reply to this letter, on December 29, 1924, the company wrote as follows:
"In reply to yours of December 21st, will state that we are enclosing herewith a premium note for $56.47 which covers the premium and loan interest due December 9th on your policy #63304 less the dividend of $13.47. This note is drawn to become due March 9th, 1925, and the same may be paid any time on or before that date.
"If this is satisfactory kindly sign and return this note at once and upon receipt of same on or before January 9th it will be accepted in payment of this premium and receipt mailed. After that date we will require satisfactory evidence of insurability in order to reinstate this policy.
"Trusting that we may hear from you by an early mail, we remain
"Yours very truly,
Two days before the above letter was written the insurer had sent to the insured a notice, termed in bold type a reminder notice, notifying him that on December 9th there was due on his policy the premium of $60.66 and loan interest of $9.28, making a total of $69.94; that the amount had not been paid and that the notice was sent as a reminder in the event that he had overlooked the matter. The insured died on January 13, 1925, without having paid the premium by note or otherwise. The death was promptly reported to the company and formal proofs were submitted upon blanks furnished by it. In response to these proofs the company wrote on January 27th as follows:
"In your letter of recent date you enclosed completed proof of death papers under the above claim, and we are herewith enclosing our check for $286.47 payable to Mary Young, beneficiary of record.
"This policy was issued on December 9th, 1918, in amount of $3,000 under a 20 Pay Endowment @ age 60 plan. Premiums were paid to December 9th, 1924, and upon nonpayment of the seventh annual premium, or installment thereof, that was due December 9th, 1924, the policy lapsed and became under its automatic provision a Paid Up policy for the reduced amount of $273 of insurance, being *Page 604 
the amount of insurance purchased by the cash value of the policy on December 9th, 1924, after having deducted policy loan of $309.33 that was due on the same date and not paid.
It is to be regretted, that the Insured neglected to pay the premium that was due on December 9th, 1924, which would have conserved the insurance for his beneficiary. You undoubtedly noticed from the claim papers, that the Insured died four days after the grace period had expired.
"Before delivering check, the enclosed release must be signed by the beneficiary before two witnesses, and when so done, promptly returned to this Department. The policy is on file at the Home Office."
The policy contains, under the heading of non-forfeiture provisions, a stipulation to the effect that after three full premiums have been paid, the insured, within thirty-one days from the last date to which premiums have been paid, may elect by a writing filed with the company at its home office, accompanied by the policy, one of three options. The first option is to surrender the policy for its cash value less any indebtedness to the company; the second to have the insurance continued by indorsement for a reduced amount of paid up endowment insurance with a cash value equal to the full reserve at the time of the surrender and a loan privilege; the third to have the insurance continued by indorsement for the face amount of the policy plus any dividend additions and less any indebtedness to the company from the date to which premiums have been paid. There is added an "automatic provision" to the effect that if the insured shall not within thirty-one days elect one of the foregoing options "the insurance shall be continued as participating paid up endowment insurance for a reduced amount, as provided in Option 2." It was under this provision that the defendant company offered to adjust the claim, and the recovery is based thereon.
The appellant contends that at the time of the death of the insured the policy was in effect to the extent of the full amount of insurance. It is first contended that there was a course of dealing between the parties relative to the acceptance of the premium after the due date which constituted a waiver of the strict terms of the policy in the matter of premium payments and the effect of nonpayment. We think it apparent that this contention can not be supported for the following *Page 605 
reasons: The premiums concerning which the defendant indulged the insured by extending time were in fact paid by note; not extended. One note was due on or before October 9, 1923. It contains the stipulation that it is given in payment of a premiumor installment thereof. It is marked "Extended to November 9, 1923" and is stamped "Paid November 10, 1923." Another note given November 10, 1923, payable on or before March 9, 1924, bears also the statement that it is given "in payment of a premium or installment thereof" and it bears notations indicating that it was extended to May 9, 1924, and then to June 9, 1924, and it is stamped "Paid May 31, 1924." These notes contained no statement to the effect that their nonpayment at maturity should operate as nonpayment of the premium and the notes cease to be a claim against the maker. As stated, the notes were expressly received in payment of the premium, and we have no doubt that, had a claim arisen on the policy after such a premium note had matured and within the time that the premium represented by such note would carry the policy, it could not be successfully contended that the policy had lapsed. Under this arrangement indulgence in the collection of notes cannot be considered as an extension of the time for the payment of the premium. The premium is paid when the note is given and the subsequent extensions only evidence the degree of accommodation which it was necessary or advisable to extend in effecting collection.
The authorities relied upon by counsel to support the contention that there was a waiver of the terms of the policy, are, in our opinion, not applicable to the situation presented here. It is not shown that the company had repeatedly accepted payment of the premiums after the policy had lapsed according to its terms. But, on the contrary, the insurer had prevented the lapsing of the policy by giving notes which the company accepted as payment. It appears that the note for the last premium here would have operated in the same manner had it been executed in accordance with the letter of December 29th, wherein the company said: "Upon receipt of the same on or before January 9th it will be accepted in payment of this premium and receipt mailed."
The further contention is advanced that the acceptance and retention of part of the premium discharges the premium obligation pro tanto and continues the policy in force. In the absence of circumstances *Page 606 
showing a waiver of the policy stipulation requiring the payment of the premium in advance, the insurer could not be compelled to accept the payment of a less amount than the installment due, which is a semi-annual premium. Halliday v. Equitable Life Assur. Soc. ante, 466, 47 A.L.R. 446, 209 N.W. 965. Nor can it be held that the mere failure to remit the dividend during the grace period and for the short time that elapsed thereafter constituted a waiver of the policy provisions respecting payment of the full amount of a premium installment in advance. In our opinion there are not present in the instant case any circumstances indicating a willingness on the part of the defendant to receive less than the amount of the premium installment in advance and, consequently, no circumstances pointing to a waiver of the policy provision in this respect. The insured, it is true, had exercised his option with regard to the application of the dividend, but it was understood by both parties that the note and the dividend together were to operate as a payment of the premium; not that the dividend alone should operate as a payment pro tanto. The correspondence is so clear on this point that there can be, in our opinion, no reasonable basis for a contrary inference.
It is suggested by the appellant that forfeitures are not favored and that the policy provisions operating to this end, when considered in the light of the transactions between the company and the insured, should be held to have been waived or should be strictly construed so as to obviate a forfeiture. In so far as waiver may be a question of fact, it is settled by the verdict of the jury in this case adversely to the contentions of the appellant. As to the forfeiture the policy in question is upon a form apparently approved by the insurance department of this state. Section. 6635f, Comp. Laws of 1913. As shown in the statement of facts above, it contains provisions designed to secure to the insured or the beneficiary the benefit, upon lapse, of insurance of the net value of the cash reserve. It so happens in the instant case that the "Automatic Provision" operates to give to the insured upon lapse an amount of paid up insurance which is purchasable by the net reserve, and the recovery is limited to this amount. When this is measured by the amount that would have been paid had the option for extended insurance been exercised, the effect, so far as the beneficiary is concerned, viewing the matter after a death claim has arisen, is a *Page 607 
forfeiture; but, viewing the matter prospectively from the time the policy lapsed, the options were apparently of equal value or under a normal condition of health of the insured they would have been of the same value.
The policy is not upon a North Dakota standard form such as is embodied in § 6635 of the Compiled Laws of 1913. In those forms the options upon surrender or lapse are substantially the same, except that the failure of the policy holder to exercise the option within the grace period operates automatically to put into effect continued insurance in the full amount for the limited time that the net reserve will pay the premium. However, § 6635c recognizes the right of insurance companies to express their contracts upon forms other than the standard North Dakota forms and specifies certain provisions that must be incorporated; and § 6635d enumerates provisions that are prohibited. Section 6635c, ¶ 8, requires in a policy such as the one in question a provision which, in the event of default in the premium payments after premiums shall have been paid for three years, will secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default and any dividend additions thereto less any existing indebtedness. The policy stipulations regarding the options upon surrender or lapse, including the automatic provision, apparently conform to this requirement. In this case it is a misfortune to the beneficiary that the policy did not contain the automatic provision of the North Dakota standard form instead of an automatic provision complying with the requirements of § 6635c, but the courts can enforce no other contract than that which the parties themselves have made.
This disposes of the contentions of the appellant to the effect that at the time of the death of the insured the policy was in force for the full amount of insurance. Without deciding as to whether the policy provision for participating paid up insurance was correctly construed and applied, the judgment appealed from must be and is affirmed.
CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and JOHNSON, JJ., concur. *Page 608