[File No. 6319.]

EARL CLIFFORD RUNDLE, Respondent, v. NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY of Minneapolis, Minnesota, a Corporation, Appellant.

(259 N. W. 43.)

Opinion filed February 20, 1935.

*Dullam & Young,* for appellant.
*Harvey J. Miller,* for respondent.

JANSONIUS, Dist. J.  The facts in this case have been stipulated and are as follows:

On August 5th, 1929, the defendant through its duly authorized agent took the application of Edith Elizabeth Rundle for a policy of Life Insurance in the sum of $1,000.  Pursuant to such application the defendant on August 5th, 1929, issued and delivered to said applicant its policy of insurance which had attached thereto a photostatic copy of the application.  The plaintiff herein was at the time and until the death of Edith Elizabeth Rundle, her husband, and the beneficiary named in the policy.

Edith Elizabeth Rundle died on December 29th, 1932, and on January 6th, 1933, plaintiff notified the defendant of the death of the insured and demanded the necessary blanks on which to make additional proof of death.  The defendant refused to furnish such blanks, and refused to pay the insurance for the reason that it claimed said policy had lapsed.

The premiums required to be paid by the policy were paid when due in the years 1929 and 1930.  The annual premium of $32.50 which was due August 5th, 1931, was paid March 12th, 1932, by making a premium loan on the policy to cover the amount of the premium, with interest that then had accrued amounting in all to $33.30.  The premium due on August 5th, 1932, was not paid.  The cash surrender value of the policy on August 5th, 1932, was $35.00, and a loan of $33.30 was unpaid, so that there remained on the loan a balance of $1.70 to apply on the premium, which was sufficient to extend the policy until and including October 25th, 1932.

The policy in question is known as a participating policy.  Its provisions with reference to participation comprise Paragraph seven (7) of the policy.  As far as these provisions are involved in this suit they are as follows:

"7. Annual Dividends.  This policy shall participate in the surplus and the company will annually determine and account for the portion of the divisible surplus accruing hereon.  The first distribution shall be contingent upon the payment of premiums for the second pol-

icy year, but subsequent dividends shall not be contingent upon the payment of future premiums. Such dividends shall be the property of the insured, and at his option may be

"a. Used to Reduce the Cost either (1) by withdrawal in cash, or (2) by application toward payment of premiums; or

"b. Applied to Increase the Amount of Insurance by the purchase of paid-up participating Additions to the policy; or

"c. Applied On the Accelerative Endowment Plan to shorten the endowment period or reduce the number of premium payments. Each succeeding dividend applied under this plan shall be used to mature the policy as an endowment at an earlier anniversary date; if any dividend is more than sufficient to mature the endowment at a certain anniversary, the difference shall be used to increase the amount payable at maturity, or, the policy may instead be converted into a participating paid-up policy for its face amount payable upon the same terms as this policy, such conversion becoming available whenever the reserve value of the dividends thus applied, together with the policy reserve, shall amount to the single premium therefor; or

"d. Left to Accumulate as an Interest-bearing Savings Fund withdrawable at any time. Dividends so left shall be credited with interest, the rate to be determined annually by the Company, but in no event to be less than three and one-half per cent, and if not withdrawn will be added to the proceeds at death, maturity, or surrender.

"Unless the Insured shall select otherwise within three months after the mailing of notice offered such selection, dividends shall be paid in cash."

At the time of the death of the insured there had accumulated as dividends on said Policy the sum of $10.75, the earnings being of the character described and provided for in said § (7) of the policy.

The application for insurance which is attached to the policy at Paragraph (12), part one thereof, contains the following questions:

How shall dividends be used?

Place a check mark before the option selected, and all future dividends will be so applied unless otherwise requested.

Opposite the question and the quoted directions, the four options are set out as follows:

a. Cash or premium.

b. Paid up additions.

c. Accelerative or Pure Endowment.

d. Left to accumulate at interest.

A check mark is placed before the last one—Left to accumulate at interest.

The policy contains under the head of "Non-Forfeiture" provisions, a stipulation to the effect that after the policy has been in force three full years or more, the insured may within thirty-one days after default in payment of any premium select one of three options.

The first option is to surrender the policy for its cash value; the second is to have the policy endorsed for participating paid up endowment insurance of a reduced amount payable at the same time and on the same conditions as his policy; the third, to have the insurance continued in force from date of default as paid up extended term insurance for the face amount of the policy, plus any paid-up dividend items and less any indebtedness.

There is added an automatic provision to the effect that if no selection is made as above provided, the policy will be automatically continued under option three as extended term insurance.

The only issue in the case is whether the accumulated dividends should have been used to purchase extended insurance under the automatic provision of paragraph (9) of the policy as contended by plaintiff, or whether the election in the application for insurance with reference to dividends constituted in effect a separate contract making such dividends payable to plaintiff only.

It is admitted that the insured did not avail herself of any of the options other than the choice expressed in the application.

A case exactly in point, decided since the judgment was rendered in this case, is Elton v. Northwestern Nat. L. Ins. Co., reported in 192 Minn. 116, 255 N. W. 857, by the Supreme Court of Minnesota. It is in point because it involves a contract identical with the contract under consideration here, and was the same defendant as in this case.

In that case the insured at the time his application was made elected just as did the insured in this case to have the dividends left with the company to accumulate as an Interest-Bearing Savings Fund.

The Court in that case says in part:

"It is well to bear in mind the determinative findings of the trial

court that the dividends were to be left with the company to accumulate as an interest-bearing savings fund, and that this particular disposition of the fund was designated by the insured in his application for insurance. He had made no change since making the selection of this particular option. It is therefore obvious that by the terms of the insured's contract itself it would have been a breach of faith and of contract on the part of the defendant if it had applied the dividend so-called as plaintiff would now have defendant do."

In the case at bar the facts are stipulated, but they are the same as the findings of fact in the Minnesota case.

On enforcement of contract according to its terms the court quotes with approval from Bergholm v. Peoria L. Ins. Co. 284 U. S. 489, 76 L. ed. 416, 52 S. Ct. 230, as follows:

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in the absence of ambiguity, in their plain, ordinary, and popular sense. . . . As long ago pointed out by this court, the condition in a policy of Life Insurance that the policy shall cease if the stipulated premium shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a court of equity cannot grant relief. [Citing cases.] And to discharge the insured from the legal consequences of a failure to comply with an explicitly stipulated requirement of the policy, constituting a condition precedent to the granting of such relief by the insurer, would be to vary the plain terms of a contract in utter disregard of long-settled principles."

For authorities bearing upon this question are the following: Williams v. Union Cent. L. Ins. Co. 291 U. S. 170, 78 L. ed. 711, 54 S. Ct. 348, 92 A.L.R. 693; Harden v. Occidental L. Ins. Co. 206 N. C. 230, 173 S. E. 617; Neighbors v. Union Cent. L. Ins. Co. 17 Tenn. App. 612, 69 S. W. (2d) 618; Dougherty v. Mutual L. Ins. Co. 226 Mo. App. 570, 44 S. W. (2d) 206.

In this case the insured agreed to pay $32.50 annually in advance. This she did not do. This Court in the case of Young v. Mutual Trust L. Co. 54 N. D. 600, 210 N. W. 177, 53 A.L.R. 910, has this to say:

"In the absence of circumstances showing a waiver of the policy stipulation requiring the payment of the premium in advance the insurer

should not be compelled to accept the payment of a less amount than the instalment due."

See also Halliday v. Equitable Life Assur. Soc. 54 N. D. 466, 209 N. W. 965, 47 A.L.R. 446.

In this case it is unfortunate for the beneficiary that the policy was permitted to lapse, but the court can enforce no other contract than that which the parties themselves have made. The annual premium of $32.50 not having been paid when it was due on August 5th, 1932, or at any time thereafter prior to the death of the insured, it follows plaintiff cannot recover, and the judgment must be reversed and the action dismissed.

BURKE, Ch. J., and NUESSLE and BURR, JJ., concur.

MORRIS, J., did not participate.

Mr. Justice CHRISTIANSON being disqualified did not participate, Hon. FRED JANSONIUS, Judge of the Fourth Judicial District, sitting in his stead.