This is a suit by the appellee on a policy of life insurance in the principal sum of $1,000, issued by the above named appellant, of date December 11, 1926. The assured was Myron Hendrix Canon, a son of the beneficiary. The assured died February 7, 1936, and, upon refusal of the appellant to pay, this suit was brought. Upon trial without a jury judgment was rendered in favor of the plaintiff for the face of the policy, less an agreed credit, also for attorney's fees and penalty.
The defendant pleaded, in bar of the action, the failure of the assured to pay a semiannual premium due upon the policy December 11, 1935, and the forfeiture of the policy because of such failure.
The single question presented is whether or not under the terms of the contract between the parties the insurer was required to apply dividends which had accumulated to the payment of the premium which fell due December 11, 1935, which, if so applied, would have kept the policy in effect until after the date of the death of the insured.
The policy provided, in part, as follows:
"4. Annual Dividends.
"This policy shall participate annually in the surplus in accordance with the provisions more fully set forth in section 7 hereof, and dividends as apportioned shall, at the option of the Insured, be used to
"a. Reduce the cost, by withdrawal in cash, or by application toward payment of premiums; or
"b. Increase the amount of insurance; or
"c. Shorten the endowment period of the policy or reduce the number of premium payments by being applied on the Accelerative Endowment plan; or
"d. Create an interest-bearing savings fund by being left to accumulate."
And further provided in part:
"7. Annual Dividends.
"This policy shall participate in the surplus and the Company will annually determine and account for the portion of the divisible surplus accruing hereon. The first distribution shall be contingent upon the payment of premiums for the second policy year, but subsequent dividends shall not be contingent upon the payment of future premiums. Such dividends shall be the property of the Insured, and at his option may be
"a. Used to Reduce the Cost either (1) by withdrawal in cash, or (2) by application toward payment of premiums; or
"b. Applied to Increase the Amount of Insurance by the purchase of paid-up participating additions to the policy; or
"c. Applied on the Accelerative Endowment Plan to shorten the endowment period or reduce the number of premium payments. Each succeeding dividend applied *Page 589 
under this plan shall be used to mature the policy as an endowment at an earlier anniversary date; if any dividend is more than sufficient to mature the endowment at a certain anniversary, the difference shall be used to increase the amount payable at maturity. Or, the policy may instead be converted into a participating paidup policy for its face amount payable upon the same terms as this policy but without disability benefits, such conversion becoming available whenever the reserve value of the dividends thus applied, together with the policy reserve, shall amount to the single premium therefor; or
"d. Left to Accumulate as an Interest-bearing Savings Fund withdrawable at any time. Dividends so left shall be credited with interest, the rate to be determined annually by the Company, but in no event to be less than three and one-half per cent, and if not withdrawn will be added to the proceeds at death, maturity or surrender."
The application of the insured for the policy, which was attached to and made a part of such policy, in section 12, provides:
"How shall dividends be used? Place a check mark before the option selected, and all future dividends will be so applied unless otherwise requested.
 a. Cash or Premiums c. Accelerative or Pure Endowment
 b. Paid up Additions X d. Left to accumulate at interest"
The policy also provides as follows:
"8b. Premium Loans. Upon written request of the Insured, which request may be revoked at any time, made prior to default in payment of premium, the Company will automatically charge as a loan against this policy any premium not paid when due thereafter, provided the cash value, less any existing indebtedness, is sufficient to cover the loan. Any dividends applicable to the payment of premiums will be deducted from the premium so charged, and there shall be added to the loan interest to the date to which the loan pays premiums. If, at any time, the cash value, less any existing indebtedness, is insufficient to cover premiums to the next succeeding anniversary of the policy, the Company will loan the semi-annual or quarterly premium for which such unused cash value after payment of such premium will be sufficient."
The insured paid the semiannual premiums regularly up to and including that which fell due on June 11, 1932. In his written application for the policy, the insured requested that the premium loan provisions of the policy should be operative and such request was never revoked.
Acting under this direction of the insured, when the semiannual premium which fell due on December 11, 1932, was not paid, appellant automatically advanced said semiannual premium and thereafter, as the semiannual premiums became due, appellant advanced the necessary premiums to keep the policy in effect until June 11, 1935, on which date, the loan value of the policy being insufficient to permit the loan of a semiannual premium, appellant did advance a quarterly premium, as it had agreed to do, which kept the policy in effect until September 11, 1935. On that date, although there was a shortage of 73 cents in the loan value, appellant advanced another quarterly premium which kept the policy in effect until December 11, 1935. The premium which fell due December 11, 1935, has never been paid and there was no further loan value in the policy on December 11, 1935, from which the company could have advanced the premium. The insured did not apply for, nor did the company grant, any extension of the premium which fell due on December 11, 1935. Paragraph d of section 10 of the policy provided that the insurance would continue in force for a period of 31 days for the payment of every premium. Since the premium which fell due on December 11, 1935, was never paid, the policy was not in effect after the expiration of the grace period of 31 days, said period terminating January 11, 1936. On or prior to the semiannual dates on which the premiums on the policy in question fell due, the Northwestern National Life Insurance Company sent to the insured, Myron Hendrix Canon, and the insured received, premium notices notifying the insured that on said various dates the premiums on said policy were due and payable. After the insured requested that the Northwestern National Life Insurance Company, the appellant herein, advance the premiums under the automatic loan provision of the policy, the insured was notified by the company, Northwestern National Life Insurance Company, appellant herein, that these advancements had been made. When the premium due June *Page 590 
11, 1935, fell due, and there was not a sufficient amount of loan value left in the policy to advance the semiannual premium on that date, when the company did advance a quarterly premium, the insured was notified of this fact. When the premium which fell due on September 11, 1935, became due, the insured was notified by appellant that the same was due and, said premium not having been paid by the insured, the company advanced another quarterly premium payment, although the loan value lacked 73 cents of being sufficient to pay said quarterly premium payment, and the insured was so notified. When the premium payment due December 11, 1935, fell due, the company notified the insured that this premium was due and there was no further loan value in the policy, and that the premium due on said date could not be advanced by the company as a loan against the policy. Shortly before the grace period expired, appellant sent to the insured a final notice that, unless the premium due December 11, 1935, was paid by January 11, 1936, his policy would lapse.
Under the terms of the policy the insured had the right to dispose of annual dividends in various ways as indicated above. He elected to have the dividends left to accumulate at interest. The appellant could not dispose of those dividends in any other manner except by breaching its contractual obligation. This is true because subsections d of sections 4 and 7 provided that the annual dividend might be left to accumulate as interest bearing savings withdrawable at any time. In the application the insured elected to have said dividends so left with the company. At the time of the death of the insured the company had in its hands the sum of $45.16, representing accumulated dividends and interest. Appellant tendered this sum, but declined to pay any portion of the face amount of the policy. The sum stated was more than sufficient to pay the premium installment due December 11, 1935, and, if it had been applied in payment of said installment, the policy would have been in effect on the date of the death of the insured.
It is the theory of the appellee that it was the duty of the appellant to so apply the accumulated dividends, and that the law would so apply the same and keep the insurance in effect under the holdings in Timmerman v. Bankers', etc., 122 Tex. 603, 63 S.W.2d 687, 689; Bankers', etc. v. Springer (Tex.Civ.App.) 81 S.W.2d 756, and other cases of like import. The authorities cited have no application in the present case.
The distinguishing feature of this case is that portion of the contract under which the insured had the right, if he so elected, to have the dividends accumulate as an interest bearing savings fund. He elected to avail himself of that option, and the insurer was contractually obligated to so hold the dividends. Under the contract the insurer had no right to divert accumulated dividends to the payment of delinquent premiums. The insured had the right to let his policy lapse and withdraw the accumulated dividends. If he had so elected, the insurer could not have declined to pay the same, because it had otherwise disposed of the accumulated dividends by paying premiums due upon the policy. The authorities fully support the view that under the contract in this case the insurer had no right to apply the dividends in payment of premiums, and the policy lapsed because of the failure to pay the premium due December 11, 1935. See the following: General American Life Ins. Co. v. Day (Tex.Civ.App.) 89 S.W.2d 1012; Williams v. Union Central Life Ins. Co., 291 U.S. 170, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693; Great Southern Life Ins. Co. v. Wester, 127 Tex. 274, 92 S.W.2d 238. See, also, note in 92 A.L.R., 712; Elton v. Northwestern, etc., 192 Minn. 116,255 N.W. 857; Rundle v. Northwestern, etc., 65 N.D. 367, 259 N.W. 43.
The judgment is reversed and reformed by limiting recovery to the sum of $45.16, being the amount of accumulated dividends tendered to appellee and refused by him, and which sum was paid into the registry of the trial court.
All costs in the trial court and in this court are taxed against the appellee.
 Reversed and reformed. *Page 591