WILLIAMS *v.* UNION CENTRAL LIFE INSURANCE CO.

No. 208. Argued December 14, 1933.—Decided January 15, 1934.

· *Mr. Harris O. Williams,* with whom *Messrs. Charles O. Harris, Charles Gibbs,* and *H. T. McGown* were on the brief, for petitioner.

*Mr. Eugene P. Locke,* with whom *Mr. Stanley K. Henshaw* was on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This action was brought by petitioner as beneficiary of a policy of insurance for $10,000 issued July 26, 1927, upon the life of her husband, who died on October 15, 1931. Application for the policy was made and the policy · was delivered in the State of Texas. A level premium of $449.10 was payable annually on June 10th, and was paid to and including June 10, 1930. The premium payable on June 10, 1931, was not paid either at that time or within the thirty-one days of grace allowed by the policy. ·

172

The "loan value" or "cash value" of the policy, as shown by the table which the policy set forth, was then $910. Loans against the policy, with interest, amounted to $898.88. The policy was a participating one, and a dividend of $74.80 was declared in favor of the insured on June 10, 1931. If that dividend had been applied in reduction of the amount advanced against the policy or to the purchase of extended insurance, the result would have been to extend the insurance beyond the date of the death of the insured. Petitioner contends that the dividend should have been so applied. Respondent insists that such application would have been contrary to the terms of the policy and that, on the expiration of the period of grace without payment of the premium due, the policy lapsed and the dividend was payable in cash and not otherwise.

Respondent's request for the direction of a verdict was denied and the verdict and judgment went for petitioner. The judgment was reversed by the Circuit Court of Appeals. 65 F. (2d) 240. This Court granted certiorari.

The policy gave the following options as to the disposition of dividends:

" 11. Dividend Options. Dividends may be withdrawn in cash; or applied to the payment of premiums; or left to accumulate with interest at three per cent, increased from surplus interest earnings as apportioned by the Directors, until the maturity of the policy, subject to withdrawal at any time; or applied to the purchase of paid-up participating additions to the policy, convertible into cash at any time for the amount of the original dividends or the reserve of the additions, if larger, but payment may be deferred by the Company ninety days from the date of application therefor."

There is no ambiguity in the terms of these options. They are clear and definite in the terminology of insurance.

and each is to be applied with its distinctive significance. No one of these options provides for the use of a dividend to procure extended insurance; that is, to procure an extension of the term of the insurance from the date to which premiums have been paid, without any further payment. Dividends may be withdrawn in cash or applied to the payment of premiums or left to accumulate with interest subject to withdrawal at any time. The further option to have dividends "applied to the purchase of paid-up participating additions to the policy" is quite distinct from an option to procure extended insurance. A "paid-up addition" to the policy, by the application of a dividend, is the amount added to the face of the policy and purchased by the use of the dividend as a single premium. For such paid-up additions, there must be a legal reserve.

The insured did not exercise any one of the options given by article 11. It appears that he had several other policies issued by the same company, and in addition to the amount advanced by the company he had borrowed certain amounts from the company's agents in Dallas, Texas. These agents, on September 18, 1931, obtained an order on the company, signed by the insured, which directed payment to them of the dividend on the policy in suit together with dividends on other policies. On this order, the dividend here in question was paid to the agents. Petitioner contested the order as having been signed at a time when the insured did not have sufficient mental capacity to understand the transaction. This issue of fact was decided by the jury in favor of petitioner and the Circuit Court of Appeals did not pass upon the sufficiency of the evidence in that relation. Nor do we deal with that question. The only other indication of the intention of the insured is sought to be drawn from a statement in a letter addressed to the company by its

agents on September 14, 1931, referring to a conversation with the insured about September 1st. The agents said that the insured had rejected their proposal for the use of dividends on his policies in partial payment of his note held by the agents, saying that " he was going to have every nickel applied towards paying these policies as far as it would carry them." We agree with the view of the Circuit Court of Appeals that this statement was too indefinite to serve as a direction to the company to apply the dividend in question in any particular way and, unless the insurance had been extended under the provisions of the policy, it had already lapsed and could be reinstated only in accordance with the requirements of the policy, that is, upon payment of premium arrears with interest and satisfactory evidence of insurability. We are unable to find any basis for the conclusion that the insured either had, or attempted to exercise, any option to use the dividend to obtain extended insurance, and our decision must turn upon the construction of the provisions of the policy applicable to such a case.

Article 12 provides for the " automatic disposition " of dividends as follows:

" 12. Automatic Disposition. On payment of the premium, or on the policy anniversary if no further premium is payable, if no other option has been elected, the dividend then due shall be applied to the purchase of paid-up additions. In the event of the death of the insured during the days of grace, the current premium being unpaid, if no other option has been elected, or if the policy shall lapse, the dividend then due shall be paid in cash. At the death of the insured during the continuance of the policy, the pro rata part of the dividend for the current policy year shall be paid in cash."

The first sentence of article 12 is inapplicable as it provides for the disposition of the dividend " on payment

of the premium, or on the policy anniversary if no further premium is payable, if no other option has been elected." The present case is not one where the premium was paid or where on the "policy anniversary" no further premium was payable. The first part of the second sentence is also inapplicable, as the insured did not die during the days of grace. It is also clear that the third and last sentence does not apply. .But the case does fall directly within the alternative of the second sentence, " *or if the policy shall lapse, the dividend then due shall be paid in cash.*" That is precisely this case. And this provision of the policy is in plain opposition to the contention that the dividend should be applied to an extension of the insurance. The provision presupposes a dividend due and the lapse of the policy for non-payment of premium, and the dividend is then to be paid in cash.

Petitioner seeks to escape this definite stipulation by invoking the provisions of the policy as to the use of the "policy value" or "surrender value" in obtaining extended insurance. After stating that the reserve of the policy "is computed on the American Experience Table of Mortality with interest $3\frac{1}{2}\%$," the policy provides:

"15. Surrender Value. After two full years' premiums have been paid, the surrender value for each thousand dollars of insurance is equal to the reserve at the end of the policy year, omitting cents, except that in the second, third and fourth policy years, it is equal to the reserve at the end of the policy year, taken to the nearest dollar, less surrender charges of $21, $13 and $6 respectively.

"16. Policy Values. The surrender value may be used at the option of the owner of the policy in any one of the following ways, all of equal value, as set forth in the following tables, provided there be no indebtedness or advances on the policy. If, on failure to pay a premium, no

option is exercised, such value shall be applied as provided in Option 1.

" 17. Option 1.—Extended Insurance. . Applied to the extension of this policy as participating term insurance from the date to which premiums have been paid, without any further payment (Table 1.)   The value of any paid-up additions will be used to increase the term of extension. Accumulations of dividends at interest may be applied to increase the term of extension.. Dividends on extended insurance shall be paid in cash and only for completed policy years.

" 22. Deduction of Indebtedness.   If there be any indebtedness or advances on this policy, the cash value shall be reduced thereby; the paid-up value shall be reduced proportionately; and the extended insurance shall be for the face value of the policy less the indebtedness and advances and for such term as said reduced cash value will provide."

Petitioner argues that an earlier provision of the policy (article 8) that " after two full years' premiums have been paid, on failure to pay any subsequent premium, this policy shall lapse and its value, if any, shall be applied as set forth in article 16," conflicts with the provision of article 12 that the dividend in case of lapse shall be paid in cash.   There is no conflict, however, as article 16 refers to the use of the " surrender value " as defined in article 15.   Instead of there being inconsistency, article 8 expressly provides for lapse on non-payment of premium, the event on which, by article 12, the dividend is to be paid in cash.   The dividend is not a part of the " surrender value."   That value is equal to the " reserve." at the end of the policy year, less the " surrender charges " stated.   Where level premiums are paid, the amount of the annual premium is necessarily greater than the mor-

·tality cost during the early years of the insurance and less than the mortality cost in later years. With the · mortality table and an assumed rate of interest on the investment of premiums received, the amount of the accumulated savings on this basis, at any date, can be mathematically computed. This amount·constitutes the " reserve " against the policy or. its net value. The insurer must have on hand the aggregate amount of these reserves against its outstanding policies. And in case of lapse, after a policy has been in force for a specified time, its net value or " surrender value," less surrender charges, is made available to the policyholder.

" Dividends " are in a different category. In fixing the annual level premium, there is added to the sum required on the basis of the mortality table, and assumed rate of interest, an amount to cover anticipated expenses and contingencies. If the rate of mortality exactly coincided with the expected rate, and the income, expenses and contingencies were precisely in accordance with the allowance made therefor, there would be no surplus and hence no dividends. But in the actual course of business there may be, and probably will be, gains from the fact that the mortality turns out to be less than that expected, or that the income is larger or the outlays are less than those estimated, and these gains are distributable to policyholders by means of " dividends " in accordance with the provisions of policies. The " surrender value " is calculated on the basis of the reserve and without reference to such possible dividends.

In this instance, according to the tables set forth in the policy to which article 16 refers, the surrender value at the time in question was $91 for each $1000 of insurance, and thus amounted to $910. According to article 22, this " cash value " was to be reduced by the amount advanced on the policy. It is not questioned that the

amount which had been advanced, with interest, was $898.88. There was thus left, of the surrender value, the sum of $11.12 which the insured was entitled to have.applied as provided in article 16. The insured, on the failure to pay the premium due, did not exercise any of the options for the use of the surrender value of the policy under article 16, and hence "such value" was to be applied "as provided in Option 1," set forth in article 17. The amount to be so applied was clearly the surrender value of $11.12, as above stated. And under ".Option 1," it was this amount that was to be used to obtain "extended insurance." ·

Article 17 provided that this amount should be "applied to the extension of this policy as participating term insurance from the date to which premiums have been paid, without any further payment (Table 1)." According to that table, the sum of $910, the total surrender value without deducting advances, would have sufficed to purchase $10,000 of participating term insurance for "four years, 330 days," that is, at between 50 and 51 cents a day. The amount remaining of the surrender value, after deducting advances, or $11.12, would thus purchase extended insurance for only twenty-two days, a period inadequate to keep the policy alive until the date of the death of the insured.

The petitioner is not aided by the other provisions of Article 17. It provides that "the value of any paid-up additions will be used to increase the term of extension." But there were no "paid-up additions." Prior dividends had been used in reduction of the annual premiums paid. No option had been exercised for the use of the dividend in question in the purchase of a paid-up addition ·as provided in article 11, and that dividend, on the lapse of the policy, became payable in cash by the terms of article 12.

Article 17 also provided that " accumulations of dividends at interest may be applied to increase the term of extension." This provision manifestly refers to the option in article 11 that dividends may be " left to accumulate with interest at three per cent." That option had not been exercised and no dividends had been left to accumulate. The provision has no application to a current dividend as to which no option had been exercised and which on the lapse of the policy is expressly made payable in cash. If, after the lapse and during the life of the insured, the company had attempted to apply that dividend to extended insurance, its action would not have been binding upon the insured and he would have been entitled to demand the cash payment explicitly promised him.[1]

It is the contention of the petitioner that, on the lapse of the policy, the dividend of $74.80 should have been applied in reduction of the amount advanced against the surrender value of the policy, thus raising what remained of that value from $11.12 to $85.92, a sum sufficient to extend the insurance until after the death. But the policy gave no warrant for an application of the dividend to the reduction of advances against the policy. As this Court pointed out in *Board of Assessors* v. *New York Life Ins. Co.*, 216 U.S. 517, 522, such advances being against the surrender value do not create a " personal liability " or a " debt " of the insured, but are merely a deduction from the sum that the company " ultimately must pay." While the advance is called a " loan " and interest is computed in settling the account, " the item never could be sued for " and in substance " is a payment, not a loan."

---

[1] See *Hutchinson* v. *National Life Ins. Co.*, 196 Mo. App. 510; 195 S.W. 66; *Atlantic Life Ins. Co.* v. *Bender*, 146 Va. 312; 131 S.E. 806; *Gardner* v. *National Life Ins. Co.*, 201 N.C. 716; 161 S.E. 308; *Toncich* v. *Home Life Ins. Co.*, 309 Pa. 336; ·163 Atl. 673.

*Id.* The company had no right, without agreement with the insured, to apply a dividend, payable in cash, to the reduction of the advance against the policy.[2]

In the endeavor to support her contention, petitioner refers to a statement and a " cash surrender voucher " sent by the company to the insured under date of July 15, 1931. These papers were submitted for the signature of the insured but were not signed or approved by him. In them, the cash value of the dividend, or $74.80, was added to the cash value of the policy, and the amount of the advances against the policy with interest, together with a " balance on loan " ($81.10) on another policy, were deducted, leaving a " net cash surrender value available " of $4.82. The endeavor to treat this statement and proposed voucher as making the dividend a part of the surrender value is unsuccessful. Not only is this effort opposed to the clear terms of the policy but the papers themselves show that the " cash value " of the dividend was regarded as a separate item. These papers, so far as the present question is concerned, evidence neither an admission nor an agreement.

As there is no ambiguity in the provisions under consideration, there is no occasion for resort to the familiar principle that equivocal words should be construed against the insurer. While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations.

---

[2] See *Wagner* v. *Thieriot*, 203 App. Div. 757, 197 N.Y.S. 560; 236 N.Y. 588, 142 N.E.295.

The remaining question is whether a different conclusion as to the interpretation of the policy is required in view of the provision of Article 4732, Revised Civil Statutes of Texas, 1925, quoted in the margin.[3] Petitioner insists that the phrase " dividend additions," as used in the statute, means " dividends." The Circuit Court of Appeals disagreed with this view, holding that " dividend additions " are " paid-up insurance in addition to the face of the policy and purchased with dividends." We think that this construction is correct. It is in accord with the uncontradicted testimony which was given by actuaries upon the trial as to the general understanding of the phrase. It will be observed that the statutory provision refers to the reserve at the date of default on the policy · " and on any dividend additions thereto." It thus refers

---

[3] The provisions of Article 4732 invoked by the petitioner are as follows:

" No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows: . . .

" 7. A provision which, in event of default in premium payments, after premiums shall have been paid for three full years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy, and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserve, less a sum not more than two and one-half per cent of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provision shall stipulate that the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance, as aforesaid, and may stipulate that the company may defer payment for not more than six months after the application therefor is made. This provision shall not be required in term insurances."

to "dividend additions" upon which there would be a reserve, that is, it would seem plainly, to paid-up insurance purchased by dividends, which would require a reserve. We also agree with the Circuit Court of Appeals that the case of *First Texas State Ins. Co.* v. *Smalley*, 111 Tex. 68; 228 S.W. 550, is not to be regarded as a construction of the phrase, as the present question was not before the court. The same is true of the case of *Occidental Life Ins. Co.* v. *Jamora*, 44 S.W. (2d) 808. In *Great Southern Life Ins. Co.* v. *Jones*, 35 F. (2d) 122, relating to a similar statute of Oklahoma, the policy provided for guaranteed "premium reduction coupons" which were fixed liabilities requiring a reserve, and were not dividends in the proper sense as in the instant case. The ruling of the Court of Appeals of Kentucky in *United States Life Ins. Co.* v. *Spinks*, 126 Ky. 405; 96 S.W. 889, 103 *id.* 335, is met by the later decision of the same court in *Jefferson* v. *New York Life Ins. Co.*, 151 Ky. 609, 616, 617; 152 S.W. 780, where the Court held that the words "dividend additions" in the statute of Kentucky "has reference solely to paid-up insurance." See, also, *Mutual Benefit Life Ins. Co.* v. *O'Brien*, 116 S.W. 750. We see no reason for attributing, under the statute of Texas, any other meaning to the terms of the policy in suit than that which would otherwise be regarded as their clear import.

The petition for certiorari in this case directed attention to what was deemed to be a conflict between the decision below and the decisions of other Circuit Courts of Appeals in *Harvey* v. *Union Central Life Ins. Co.*, 45 F. (2d) 78, and *Atlantic Life Ins. Co.* v. *Pharr*, 59 F. (2d) 1024. In the case of *Harvey*, the decision could, and did, rest on the fact that the period of extended insurance, to which the surrender value was applicable according to the provisions of the policy, ran from the effective date of the policy and, as thus calculated, the insurance extended be

yond the date of death. So far as what was said by the court in that case may be regarded as bearing upon the question presented in the instant case, it was, and was stated to be, unnecessary to the decision. In the case of *Pharr*, there were provisions in the policy, quite different from those before us, which were of doubtful meaning. The views expressed by the court may be taken as limited to the facts of the particular case.

The judgment of the Circuit Court of Appeals is

*Affirmed.*