GENERAL AMERICAN LIFE INS. CO. v.
DAY.
No. 13272.

Court of Civil Appeals of Texas. Fort
Worth.
Dec. 6, 1935.

Rehearing Denied Jan. 10, 1936.

S. C. Rowe, of Fort. Worth, for appellant.

John D. McComb, of Jacksboro, and Hampden Spiller, of Fort Worth, for appellee.

MARTIN, Justice.

The case is very fairly stated in appellant's brief, from which we quote at length:

This suit was brought by the appellee on November 18, 1933, upon two policies of life insurance issued by the Missouri State Life Insurance Company to her deceased husband, Travis E. Day, who died on the 22d day of March, 1932, and upon which default in the payment of premium on one policy as well as default of the interest due on policy loans on both policies had occurred on April 3, 1931, and May 21, 1931, respectively, and no premium or interest on either policy thereafter paid as shown by agreement of the parties filed in the cause April 16, 1932, as follows:

"That on May 21, 1931, there was due on Policy No. 71371, herein sued upon, the sum of $36.76, premium by the terms of the policy payable in advance on that date; and the sum of $32.45 as interest on policy loan of $540.84, which was, by the terms of said policy, also payable on said May 21, 1931. That neither the said premium nor said interest was paid by said Travis E. Day, the insured, to the Missouri State Life Insurance Company. That on said May 21, 1931, the indebtedness of $540.84 due by said insured to said Company upon said policy loan equaled the full cash value of said policy, including net value of additions, under the terms and conditions of said policy and the Table of Non-forfeiture Values, to the end of the seventeenth year, towit, May 21, 1931, as shown by said table, a part of said policy.

"That on April 3, 1931, there was due on Policy No. 51381, herein sued upon, the sum of $76.44, interest, payable by the terms of said policy in advance on that date, on policy loan of $1,273.96. That the said interest on said policy loan was not paid by said Travis E. Day, the insured, to the Missouri State Life Insurance Company on said April 3, 1931, or at any time thereafter so paid by said Travis E. Day to said Missouri State Life Insurance Company. That on said April 3, 1931, the indebtedness of $1,273.96 due by said insured to said company upon said

policy equaled the full cash value on said policy, including net value of additions, under the terms and conditions of said policy and the Table of Non-forfeiture Values, to the end of the twentieth year, towit, April 3, 1931, as shown by said table, a part of said policy."

It was also agreed that the General American Life Insurance Company had assumed all liability, if any was found, of the Missouri State Life Insurance Company upon these policies.

Appellee excused the failure to pay premium on policy No. 71371 and interest on both policies upon the alleged total disability of the insured.

In her first supplemental petition, replying to the appellant's second amended original answer setting up the lapsing of the policies by reason of the failure of the insured to pay premium and interest upon the loans when due, appellee also set up the permanent disability of the insured.

The court sustained the appellant's demurrers to that portion of her first amended and first supplemental petitions above referred to, setting up the total disability of the insured as accounting for the failure to pay the premium and interest due on loans.

In her first supplemental petition, in addition to setting up total disability, stricken on demurrer as stated, she pleaded that the insured had not received any notice of forfeiture of the respective policies under the provisions thereof, as pleaded by the appellant in its above-mentioned amended answer.

The case was submitted to the jury upon two issues only; same and the answers thereto adverse to the appellee being as follows:

"Question One: Do you find from a preponderance of the evidence that the defendant, on May 21, 1931, mailed the original or a copy of the notice, in evidence before you as defendant's Exhibit C, addressed to Travis E. Day, P. O. Box 156, Abilene, Texas? Answer: Yes.

"Question Two: Do you find from a preponderance of the evidence that the defendant, on April 3, 1931, mailed the original or a copy of the notice, in evidence before you as defendant's Exhibit D, addressed to Travis E. Day, P. O. Box 156, Abilene, Texas? Answer: Yes."

No other issues were requested by the parties.

Appellant timely filed its motion for judgment based on the verdict of the jury in its favor on the only two issues submitted.

On September 13, 1934, appellee filed her motion for judgment non obstante veredicto, setting up her right to judgment notwithstanding the verdict, in substance, because the respective notices of forfeiture which the jury found to have been sent in response to the issues were insufficient upon which to base a forfeiture, for the reason that the same showed on its face that the amount of the indebtedness against the said policies was the full amount of the loan and the interest which became due on April 3, 1931, whereas there was at that time a dividend of $28.50 due to the assured on policy No. 51381, and a dividend of $12.89 due on policy No. 71371, and that neither of the said notices gave credit for the respective amounts of these dividends in setting out the amount due under each policy, and thereby stated an amount greater than that due and incorrectly stated the amount due under the policy, and therefore was not in conformity with the terms of the forfeiture clause in each of said policies.

The provision of the policy with reference to giving notice in case of default in repayment of loan or payment of interest thereon is as follows: "Failure to repay any loan granted hereon by the company, or to pay interest thereon, shall not avoid this policy, unless the total indebtedness hereon to the company shall equal or exceed the cash value of this policy at the time of such failure, nor until one month after notice shall have been mailed by the company to the last known address of the insured and of the assignee, if any."

The following are the provisions of both policies relating to dividends:

"Cash dividends from the surplus: At the end of the tenth and subsequently at the end of each and every policy year, this policy, if in full force, will be credited with a dividend from the ten-year and annual surplus accumulations then apportioned by the company to policies of the same age and kind. All dividends shall be payable in cash when credited, but may, subject at all times to the written demand of the insured, remain on deposit with the company to accumulate at such rate of interest, in no event less than three per cent per annum, as the company shall from time to time determine and allow, and the

insured may exchange this policy for a profit-sharing paid-up policy for the face amount hereof, when the accumulated dividend deposits, together with the reserve on this policy and on any paid-up insurance additions thereto, equal or exceed the net single premium then required for such a paid-up policy by the reserve standard herein named."

"Dividend deposits may remain with the company at interest while this policy remains in force, becoming payable in cash in any event upon the discontinuance of this policy—to the beneficiary if this policy matures as a death claim, otherwise to the insured. Provided, that no premium shall be construed as paid either wholly or in part, nor any insurance hereunder extended or continued in force, by reason of any dividend deposits remaining with the company."

The evidence shows that, as shown by checks issued by the Missouri State Life Insurance Company and received, indorsed, and cashed by the insured, dated, respectively, May 14, 1931, and June 18, 1931, the assured was paid the dividend due on policy No. 51381 in the sum of $28.50, and the dividend due on policy No. 71371 in the sum of $12.80. Appellant specially pleaded such payment to and acceptance by insured of the dividends.

Each of the loan agreements executed by the insured contained the following provision: "Failure to repay any loan hereon, or to pay interest will avoid this policy if the total indebtedness hereon to the company equals or exceeds the then cash value, but not otherwise. In such event this policy will become void thirty-one days after the company shall have mailed notice to that effect to the last known address of the insured and of the assignee of record, if any. Any indebtedness hereon will be deducted in any settlement of this policy."

On January 22, 1935, the trial court granted appellee's motion for judgment notwithstanding the verdict and rendered judgment in her favor against appellant upon said policies in the aggregate sum of $2,662.53, representing balance found by the court to be due upon both of the policies in excess of loans and interest, with penalty, interest, and attorney's fees added, to which judgment appellant in open court excepted and at the same time gave notice of appeal to this court.

The judgment of the trial court seems to have been based upon the effect given by the court to the cash dividend items due the insured at the time the policies were canceled by the company or at the time the notices were mailed to him.

The provisions of the policies relative to these dividends are copied in the statement above.

It is claimed by the appellee that the insurance company should have applied these dividends to an extension of the insurance, or, if not applying the same, should have at least taken them into account in rendering notice to the insured, and that its failure to do so renders the notice void and amounts to a breach of the contract of insurance. The company construed this dividend as separate and distinct from the premiums and interest due and shortly after the cancellation of the policies sent the insured checks to cover the same, which he received and cashed.

The appellant insists that, under the terms of the contract above quoted, it could do nothing else with these deposits, and that it was well within its contractual rights in all that it did in the matter.

■■■ It is well settled that forfeitures are not favored in law, and this principle is particularly applicable to the forfeiture of insurance contracts, and, where the terms of such contracts are ambiguous, the rule also applies that a construction favorable to the insured must be applied. But, as stated by Mr. Chief Justice Hughes in the case of Williams v. Union Central Life Insurance Co., 291 U.S. 170, 54 S.Ct. 348, 352, 78 L.Ed. 711, 92 A.L.R. 693: "While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations."

By the dividend terms of the policies before us, we find expressed in such terms as may not be misunderstood, first, how they are created, to wit, out of surplus; second, that they are payable on demand "in cash when credited to the policy, but may, subject at all times to the written demand of the insured, remain on deposit with the company and accumulate at a rate of interest not less than three per cent," etc. By the second clause quoted above, it is

provided that such dividends "may remain on deposit with the company at interest while this policy remains in force, becoming payable—in cash in any event, upon the discontinuance of this policy—to the beneficiary if this policy matures as a death claim, otherwise to the insured. Provided that no premium shall be construed as paid either wholly or in part, nor any insurance hereunder extended or continued in force, by reason of any dividend deposits remaining with the company."

These provisions are certainly not ambiguous. The meaning is clear. The company simply contracts from time to time to declare dividends out of its surplus, crediting each policy with the same, according to class, to pay interest on the same when it is left on deposit with the company, that the insured may use such accumulations, together with reserves and paid-up additions thereto, in exchange for a profit-sharing paid-up life policy when such sums together shall equal or exceed the premium required for such policy. All these privileges are optional with the insured. But, in order to keep these dividends separate and distinct from premiums, it is specially provided in the concluding sentence of the second paragraph that this deposit shall not be construed as payment or part payment of any premium or to warrant any extension of insurance by reason thereof.

That this is the contract is certain—as certain as language can make it. Such being the case, the only remaining question is whether it is in conflict with the Texas Statute, article 4732, R.S.1925. The portions of said statute applicable to this case are as follows:

"No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows: * * *

"7. A provision which, in event of default in premium payments, after premiums shall have been paid for three full years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy, and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserve, less a sum not more than two and one-half per cent of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provision shall stipulate that the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance, as aforesaid, and may stipulate that the company may defer payment for not more than six months after the application therefor is made. This provision shall not be required in term insurances."

In the case of Williams v. Union Central Life Insurance Co., supra, the United States Supreme Court construes the words "dividend additions" to mean "paid-up insurance in addition to the face of the policy and purchased with dividends." As such, the parties no doubt had the right to contract relative thereto unhampered by statute and in this contract they seem to have treated such dividends as unattached and disconnected with the policies. By the terms of the contract they were deposits, left in the hands of the company, subject to the order of the insured, and only payable upon his order, until the termination of the relation of insurer and insured, and then to be paid to the insured, if living, and to the beneficiary, if death terminated the relation, but in no event to be used for the purpose of extending the insurance. We think they could so contract.

Appellee strongly insists that this case is ruled by the decision of the Commission of Appeals of Texas in the case of Timmerman v. Bankers' Reserve Life Co., 122 Tex. 603, 63 S.W.(2d) 687, 690. Some of the language used by Judge Leddy in that case strongly supports the position of the appellee. He says in this case: "The rule seems to be well established that a life insurance company will not be permitted to insist that a policy has been forfeited for nonpayment of premium if at the time such premium becomes due it has in its possession dividends presently payable belonging to the insured which are sufficient to discharge the premium at its maturity."

In that case the accumulations were represented by coupons, which, together with the policy itself, had been transferred by the insured to the company as security for a loan amounting to the cash value of the policy. No provision in the contract prevented the use of such coupons for such purpose. They were the same as so much

cash in the hands of the company, and of course such coupons could be and should have been used for the purpose of keeping the insurance contract alive. The closing words of Chief Justice Hughes in the Williams Case are peculiarly apropos: "The views expressed by the court may be taken as limited to the facts of the particular case." We do not believe Judge Leddy intended to announce an unnecessary universal rule in using the language quoted, certainly not such a rule as would have the effect of abrogating a solemn contract of the parties.

Under the agreement of the parties herein quoted and the facts proven and under the law as we understand it, we are constrained to sustain the first and second assignments of error presented by the appellant and reverse and render the judgment of the trial court in so far as the $2,000 policy is concerned. Williams v. Union Central Life Insurance Co., 291 U. S. 170, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693; Jefferson v. New York Life Insurance Co., 151 Ky. 609, 152 S.W. 780; Mutual Benefit Life Insurance Co. v. O'Brien (Ky.) 116 S.W. 750.

The appellee by cross-assignment raises the question that the trial court erred in sustaining appellant's exception to that portion of plaintiff's petition in which she pleaded the permanent total disability of the insured. In this pleading she alleged the permanent total disability of the insured before the time the premium became due, and alleged that the company knew of such disability long prior to the time the $1,000 policy was forfeited for nonpayment of premium. The company took the position that proof of such disability and the approval of such proof were conditions precedent to liability of the company, and the trial court sustained that view.

In the case of Hablutzel v. Home Life Insurance Co. of New York, 332 Mo. 920, 59 S.W.(2d) 639, 641, construing the terms of a very similar policy, the Missouri Supreme Court, through Chief Justice Gantt, specifically approved the language of the Court of Appeals as follows: "The essence of the foregoing provision is that, 'if the insured shall furnish due proof that he has become totally and permanently disabled, the company will waive the payment of premiums thereafter becoming due.' In ruling the question, the Court of Appeals [52 S.W.(2d) 480] said: 'Does this provision mean that the company will waive premiums becoming due after the insured has furnished proof, or after he has become disabled? We construe it to mean that the company will waive premiums becoming due after the insured has become disabled, because this construction is more favorable to the insured, and more in consonance with the purpose of the provision, which is to give protection to the insured against disability.'" See, also, State Life Insurance Co. v. Barnes, 58 S.W.(2d) 189, by the Austin Court of Civil Appeals, opinion by Chief Justice McClendon, and authorities cited by him.

The weight of authority seems to be that the liability of the insurer to waive payment of premiums depends upon the accrual of disability rather than the proof thereof. Indeed it has been held that the time of making the proof is not "of the essence of the contract." 24 Tex.Jur. 1092; Missouri State Life Ins. Co. v. Le Fevre (Tex.Civ.App.) 10 S.W.(2d) 267 (writ of error dismissed).

Appellee alleged the existence of the disability at a time prior to the cancellation of the $1,000 policy (No. 71371), and alleged that the company knew of such disability.

In our judgment the trial court fell into error in sustaining exception to this pleading.

It follows that the judgment below should be and is reversed and here rendered in so far as policy No. 51381 is concerned in favor of the appellant, but reversed and remanded to the trial court in so far as policy No. 71371 for $1,000 is concerned. The court costs in this court will be equally divided between appellant and appellee, and mandate is directed to so issue.