**BOSTICK v. LIFE INS. CO. OF VIRGINIA.**

**No. 8099.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 19, 1936.

Hamilton Phinizy and Abram Levy, both of Augusta, Ga., for appellant.

C. Baxter Jones, of Macon, Ga., and W. D. Lanier, of Augusta, Ga., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

Appellant brought this suit as beneficiary to recover on a policy of life insurance issued to her husband, Nathaniel Holcome Bostick, by appellee, in the sum of $3,000,

reduced to $2,408.77 by a loan against the policy; for a penalty of 25 per cent. thereon for failure to promptly pay the claim; and for attorneys' fees, a total exceeding $3,000. The suit was dismissed on general demurrer.

The facts disclosed by the pleadings and annexed exhibits are these: The policy issued on November 27, 1925, as a twenty-year, limited payment, nonparticipating life policy on a quarterly premium basis, the first quarterly premium of $29.94 payable in advance and a quarterly premium of the same amount payable every three months thereafter. On December 28, 1933, the insured negotiated a loan on the policy of $645, which was the full amount he was entitled to borrow at the end of the 8th policy year. Out of this he paid the quarterly premium due November 27, 1933, which had become delinquent but was paid within the grace period. No further premiums were paid, the insured did not apply for an additional loan and did nothing at all to keep the policy in force. He died on December 7, 1934. The policy contained the following provisions, in addition to the usual clauses providing for nonforfeiture, incontestability, and lapse for nonpayment of premiums.

"Loans—At any time after three full years' premiums have been paid, and while this Policy is in force, the Company will advance to the Insured as a loan on this Policy upon proper assignment and on the sole security hereof, an amount not exceeding the loan value of this Policy at the end of the then current policy year, as shown in the Table of Loans and Surrender Values below."

"If this Policy shall lapse for the nonpayment of any premium, after premiums have been paid for at least three full years of insurance and there is no indebtedness to the Company on account of this Policy, the Company will grant one of the following options:

"Automatic Extended Insurance—The Company, without any action on the part of the Insured, will carry the face amount of this Policy as Non-Participating Extended Insurance, from the date to which premiums have been paid for the term shown in the Extended Insurance column in the Table of Surrender Values opposite the number of full years for which premiums have been paid; (Other options are not material).

"In case there is any indebtedness on account of this Policy, the insurance payable under the Extended Insurance Option shall be the face amount of this Policy, less the amount of such indebtedness, and the term for which such insurance shall be extended shall be for such time as the cash surrender value of this Policy herein specified, after deducting such indebtedness, will carry the modified amount according to the Table of Net Single Premiums for Term Insurance, computed by the American Experience Table of Mortality with three and one-half per cent. interest; the insurance payable under the Paid-up Life Policy shall be reduced in the same proportion as such indebtedness bears to the Cash Surrender Value. If a Cash Surrender Value is chosen, the said indebtedness shall be deducted from the cash value that might otherwise be claimable, and the balance, if any, paid in cash."

"Table of Loans and Surrender Values

"Provided No Notes or Loans Are Outstanding.

"The Cash or Loan Values and Paid-up Policies stated in the following table apply to a policy of $1,000. As this policy is for $3,000, the Cash or Loan Value and the Paid-up Policy available in any year will be Three times the amount stated in the table below for that year."

The cash and loan value shown in the table at the end of the 8th year was $215; at the end of the 9th year it was $248. Below the table was this note:

"This Policy is valued upon the American Experience Table of Mortality with three and one-half per cent. interest. The values in the above table are equal to the full reserve according to the foregoing standard less a decreasing surrender charge which in no case exceeds 2½% of the amount of insurance. Values for years not covered by the above table will be equal to the full reserve."

It is not disputed by appellant that the policy lapsed for nonpayment of the quarterly premium due February 27, 1934, and was subject to be canceled in liquidation of the loan. However, it is contended that the insured, having paid one quarterly premium in the ninth policy year, that year was the current year, and the insured was entitled to a loan of the amount specified in the table at the end of the ninth year; that by rebating the unearned interest on

the existing loan and deducting the unpaid premiums for the balance of the year and interest on the new loan, there would be sufficient cash value left , to carry the policy as extended insurance beyond the date of death. In other words, it is contended that the loan value and cash surrender value are the same and the payment of the one quarterly premium must be construed as increasing the loan value and cash surrender value for the purpose of extended insurance. We are spared the necessity of tabulating these figures as appellee concedes that, if the loan value and the cash surrender value are to be construed to be the same, as contended by appellant, and the payment of one quarterly premium increased the loan value, there was sufficient cash value to carry the policy as extended insurance beyond the date of the death. However, the contentions of appellant are vigorously disputed.

 Appellant cites a number of cases in support of her contentions. Only one is in point, to wit, Security Life Ins. Co. of America v. Matthews, 178 Ark. 775, 12 S. W.2d 865. The opinion in that case is not persuasive. The other cases, which we consider unnecessary to review, deal with policies having dissimilar provisions to the policy here under consideration, or involve the application of state statutes. Appellant relies on section 56-912, Ga.Code of 1933. That statute deals with the calculation of net values of life policies by the insurance commissioner and has no application to the case. Cf. Mutual Ben. Life Co. v. First Nat. Bank, 115 Ky. 757, 74 S. W. 1066, construing a similar statute. There is no other Georgia statute that would apply. Appellant also relies upon the provisions of the policy, last above cited, to the effect that the policy is valued upon the American Experience Table of Mortality. This is merely an explanatory note and would have no application unless values for some of the years covered by the policy were not stated in the table. It is not to be considered a guarantee that in any event the cash surrender values would exceed those that are stated in the table. Moss v. Ætna Life Ins. Co., 6 Cir., 73 F.2d 339.

 Conceding, for the sake of argument, that the insured could have applied for and obtained a loan based upon the loan value at the end of the ninth year, as he made no such application, the provisions of the policy as to loans have no application. While the same figures are used to denote loan value and cash value in the table, these provisions are separate and distinct. The provision that extended insurance should be based upon the surrender value at the end of the full year for which premiums had been paid is plain and unambiguous. Since the insured did nothing to secure a loan or otherwise to keep the policy in force, the company was under no obligation, and in fact was without authority, to do anything except apply the provision for automatic extended insurance. Williams v. Union Central Life Ins. Co., 291 U.S. 170, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693. Necessarily this was based upon the cash value at the end of the eighth year. Under any construction of the policy, this was not sufficient to keep the policy in force at the time the insured died. It was not error to sustain the demurrer.

Affirmed.