Charles C. MYRE, Appellee,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a corporation, Appellant.

No. 74–1043.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1974.

Decided July 19, 1974.

Floyd E. Nelson, Minneapolis, Minn., for appellant.

Walter W. Laidlaw, Minnetonka, Minn., for appellee.

Before GIBSON and WEBSTER, Circuit Judges, and WILLIAMS, District Judge *.

* The Honorable Paul X Williams, United States District Judge, Western District of Arkansas, sitting by designation.

GIBSON, Circuit Judge.

Plaintiff, Charles Myre, brought this diversity action against Connecticut General Life Insurance Company for $50,000, the amount he claims is due him under a group life insurance policy issued by the defendant to his former employer Braniff Airways, Inc. Defendant does not contest its liability under the policy for $10,000, but strenuously asserts that plaintiff is only entitled to a waiver of premiums on the remaining $40,000 of the face amount. The District Court [1] rendered final judgment for the plaintiff for $50,000 and defendant appeals.

Plaintiff, a former airline pilot, became totally and permanently disabled May 7, 1970. Under provisions of the group life insurance contract (No. 221416–06) issued by defendant he was entitled to the "amount of insurance in force on the Employee's life on the day he became Permanently Totally Disabled." [2]

Other provisions of the policy provide:

The total amount of life insurance actually in force at any time on the employee is shown on the Braniff International Employee Insurance Statement and consists of term insurance or paid-up insurance or a combination thereof * * *. If the employee has not, at anytime, purchased paid-up insurance, his amount of insurance will consist of term insurance only.

Term Insurance is defined in the policy as:

The amount of term insurance in force on an employee at any time while he is insured for term insurance will equal the sum of the Basic and Additional amounts, if any, shown on the Statement.

The plaintiff contends that the clear wording of the policy provisions requires a finding that he is entitled to the full $50,000 of term insurance in force at the time he became Permanently Totally Disabled. The company, however, points out that the disability provision appears on a page containing the following endorsement:

The provisions set forth on this page shall apply only to amounts of term insurance excluding amounts of Additional Insurance.

The determination of what amount plaintiff is entitled to rests upon the construction of this endorsement. It is clear that without the endorsement plaintiff would be entitled to the entire $50,000 "amount of insurance in force" as per the waiver clause. The insurance company contends that this endorsement limits plaintiff's recovery to only the Basic term amount ($10,000), excluding the Additional term amount ($40,000). The District Court disagreed; a Florida District Court of Appeals has disagreed; [3] and we must disagree.

The District Court reached its conclusion by determining that the language of the endorsement creates an ambiguity. With this we agree and note the language of the endorsement might be construed consistent with plaintiff's claim. "Term insurance" was defined by the company as the sum of the basic and additional amounts. "Additional insurance" is nowhere defined in the policy; further, there could be several types of additional insurance as this group policy included, in addition to term life insurance, paid-up life insurance, disability income insurance, and medical insurance. Had the insurance company wished to clearly exclude recovery of the additional term insurance, it could easily

---

1. The Honorable Miles Lord, United States District Judge, District of Minnesota.

2. This policy provision provides:
   Upon receipt by the Insurance Company of due proof that an Employee, prior to his 60th birthday and while insured under this policy has become Permanently Totally Disabled, the Insurance Company, in lieu of all other benefits and options provided

under this policy, will waive further premiums for the insurance on that Employee and will pay to the Employee the amount of insurance in force on the Employee's life on the day he became Permanently Totally Disabled.

3. Moore v. Connecticut General Life Insurance, 277 So.2d 839 (Fla.App.1973), cert. denied, 291 So.2d 204 (Fla.Sup.Ct.1974).

have worded its exclusionary endorsement to apply "only to amounts of *Basic* term insurance excluding amounts of *Additional* *term* insurance." [emphasized words inserted].

The failure to do so leaves the meaning of the endorsement ambiguous. Whether "additional insurance" as used in the endorsement refers to additional term insurance or one of the other coverages of the group policy is not made clear. Such an uncertainty is within the concept of ambiguity,[4] which ambiguity under long standing rules of construction we must resolve against the insurer. Bergholm v. Peoria Life Insurance Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416 (1932); Looney v. Allstate Insurance Co., 392 F.2d 401, 405 (8th Cir. 1968).

Another permissible construction would recognize that the employee has two types of possible life insurance coverage, term and paid-up. The payment clause of disability provision provides that the company will pay "the amount of insurance in force on the Employee's life" which had been previously defined as the sum of term and paid-up insurance. The endorsement thus can be seen as excluding recovery of paid-up insurance in the event of disability but not negating the recovery of the full $50,000 Myre had in term insurance.[5]

The insurance company raises one further argument. It argues that this was a negotiated contract and thus any ambiguity should not be resolved against it and in favor of the insured. This claim is entirely devoid of any factual support in the record, whatever its merits as a legal argument.

The judgment of the District Court is affirmed.

WEBSTER, Circuit Judge (dissenting).

I respectfully dissent.

In order for the District Court and the panel majority to perceive an ambiguity in the insurance policy it was necessary to ignore certain fundamental and well established rules of contract construction.

In testing for ambiguity, the entire contract must be reviewed as a whole to ascertain the interest of the parties;[1] it is presumed that every condition was intended to accomplish some purpose;[2] a court will attempt to give meaning and effect, if possible to every word and phrase in the context in determining the meaning thereof;[3] it is not permissible to lift one sentence from the remainder of the policy and attach a peculiar meaning to that sentence standing alone;[4] and "wherein some confusion appears, or an apparent discrepancy or repugnancy exists between the various policy expressions, the court will attempt to harmonize such provisions and seek a construction which will give reasonable force and

---

4. In Arkansas Amusement Corporation v. Kempner, 57 F.2d 466, 472 (8th Cir. 1932) we stated:

   The term "ambiguous" means doubtful and uncertain. 1 Bouvier's Law Dictionary 117 defines ambiguity: "Duplicity, indistinctness, or uncertainty of meaning of an expression used in a written instrument." Minnesota law is in accord. Resler v. Rogers, 272 Minn. 502, 139 N.W.2d 379, 382 n. 1 (1965); Employer's Liability Assurance Corp. v. Morse, 261 Minn. 259, 111 N.W.2d 620, 624 (1961).

5. This was noted by the Florida court in *Moore, supra*, 277 So.2d at 842:

   In the absence of some such wording to express an intent in those respects the language in the clause that the provisions on that page of the policy "will apply only to amounts of term insurance excluding amounts of additional insurance," was equally if not more susceptible to be interpreted to mean that the provisions on that page *would* apply to the term insurance (which in this instance was $50,000 of such insurance) and that the "additional insurance" to which the exclusion related had reference to insurance other than the "term insurance" to which the clause stated the provisions on that page would apply. (emphasis in original).

1. 13 J. Appleman, Insurance Law and Practice § 7383, at 11–12 (Rev. ed. 1965). *See also* 43 Am.Jur.2d, Insurance § 263 (1969).

2. Appleman, *supra* note 1 at 10.

3. *Id.*

4. *Id.* at 12–13.

effect to all of such provisions without conflict."[5] Where the same words are used in different clauses of the insurance contract, they will ordinarily be understood to have been used in the same sense.[6] In my view the total disability provisions of the certificate of insurance, read as a whole and in accordance with the foregoing rules of construction, can have but one meaning.

Originally Braniff paid the cost of a "basic" amount of term life insurance and employees were permitted to carry "additional" amounts of term life insurance under the policy at their own expense. In 1971 Braniff took over the entire cost but the distinction continued in relation to provisions in event of total disability of the insured. Thus, "term insurance" is defined in the policy as:

> The amount of term insurance in force on an employee at any time while he is insured for term insurance will equal the sum of the *Basic* and *Additional amounts*, if any, shown on the Statement. (Emphasis added)

The first section relative to "Life Insurance for Employer—Total Disability Benefits" is preceded by the legend:

> The Provisions set forth on this page will apply to amounts of term insurance *excluding* amounts of additional insurance. (Emphasis added)

The *next* section, labeled "Life Insurance for Employer—Extension of Insurance During Total Disability", is preceded by the legend:

> The provisions set forth on this page will apply *only* to amounts of additional insurance. (Emphasis added)

The policy thus provides for two kinds of term life insurance—basic and additional. "Additional" is included in the definition of term insurance, but is expressly excluded from the application of the first section on total disability. The next section on total disability is made applicable *only* to additional insurance. Read in this light, and giving meaning to each clause, the separate treatment for "basic" and "additional" term life insurance is clear. In the event of total disability before age 60, the employee is entitled to receive "the amount of insurance in force on the employee's life" but "excluding amounts of additional insurance". The next section provides that as to "additional insurance" the insurance coverage will be extended from date of total disability, and premiums thereon waived, until the death of the employee, at which time the amount of "additional insurance" in effect will be payable.

These integrated and inter-related provisions admit of no other reasonable interpretation. In order to find an ambiguity the majority must (1) hypothecate that "additional insurance", although used only in the context of *life* insurance could mean some other type of benefit and (2) totally ignore the section which expressly deals with treatment of "additional insurance".[7] This, is my view, distorts in an impermissible manner a logical and unambiguously stated plan of life insurance with total disability benefits. If "additional insurance" meant something other than term life insurance, and *all* of the term insurance was to be paid out at time of total disability, as plaintiff contends, then the next following section providing for extended coverage and waiver of premium as to "additional insurance" in case of total disability would have no meaning or application at all.[8] While in cases of

5. *Id.* at 13; *see* Aetna Ins. Co. v. Sacramento-Stockton S.S. Co., 273 F. 55 (9th Cir. 1921); World F & M Ins. Co. v. Carolina Mills Distributing Co., 169 F.2d 826 (8th Cir. 1948).

6. Willingham v. Life & Casualty Ins. Co., 216 F.2d 226 (5th Cir. 1954).

7. "The sense in which a word or phrase is used is normally determined by its context." Slay Warehousing Co., Inc. v. Reliance Ins. Co., 471 F.2d 1364, 1368 (8th Cir. 1973).

8. As noted in the majority opinion, a Florida intermediate court found the provisions of this contract to be ambiguous. Moore v. Connecticut General Life Insurance Company, 277 So.2d 839 (Fla.App.1973). That court likewise totally ignored the provisions of the contract dealing with the additional term insurance excluded from the payout clause in event of total disability. These sections dealt with term life insurance and term life insurance alone. Paid-up life insurance was covered under separate provisions, and an em-

doubtful meaning the construction most favorable to the insured will be adopted, "[t]his canon of construction * * * furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings." Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416 (1932). As we said in Terry v. New York Life Ins. Co., 104 F.2d 498, 504 (8th Cir. 1939):

> Even though we might think that the meaning of the challenged words used by the insurer could have been better or more accurately expressed, that would constitute no justification for disregarding the plain import of appropriate language. Williams v. Union Central Life Ins. Co., supra, 291 U.S. 170, page 180, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693.

I would reverse the judgment of the District Court with instructions to enter judgment in accordance with its original order and judgment entered July 30, 1973.[9]

ployee was eligible to purchase paid-up insurance only if he was "insured for Additional Insurance"—again clearly indicating that "Additional Insurance" was something other than paid-up insurance.

9. Judge Lord originally held the contract to be unambiguous but reversed himself following the Florida decision, *supra*, saying "I am uncertain."