In re James O. WATTS, Jr., Debtor.

W. Alan SMITH, Jr., Trustee, Plaintiff,

v.

The EQUITABLE LIFE ASSURANCE
SOCIETY OF the UNITED
STATES, Defendant.

Bankruptcy No. 680–00250–L.
Adv. No. 680–0058.

United States Bankruptcy Court,
W. D. Virginia,
Lynchburg Division.

Oct. 6, 1981.

Bernard C. Baldwin, III, Lynchburg, for
trustee/plaintiff.

W. Alan Smith, Jr., pro se.

Richard M. Thomas, Roanoke, Va., for
Equitable Life Assur. Society of the U. S.

James O. Watts, Jr., Poplar Forest, Va.,
debtor.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy
Judge.

In this adversary proceeding the Trustee
seeks to recover certain sums of money
from The Equitable Life Assurance Society
of the United States ("Equitable") which
the Trustee alleges were received as a void-
able preference in violation of 11 U.S.C.
§ 547. The material facts are set forth in a
Stipulation of Counsel and are briefly sum-
marized as follows.

The debtor, James O. Watts, Jr., filed his
voluntary petition under Chapter 7 on April
16, 1980. Prior to that time, Watts had
been the holder of three life insurance poli-
cies issued by Equitable. During the life of
these policies Watts on several occasions
requested and received advances in the
form of policy loans. These loans were
never repaid, and in accordance with the
terms of the policies interest was charged
at the rate of 5% per year. Pursuant to a
request for the surrender of the policies
Equitable paid the net cash value of the
policies to Watts by checks dated April 15,
1980. These checks were received by Watts
subsequent to the filing of the petition in

bankruptcy and were delivered by him to the Trustee.

The net cash value of the policies was computed pursuant to the following provision found in each policy:

The net cash value of this policy is the cash value for the face amount at the date of default (determined in accordance with the Table of Loan and Surrender Values) increased by the cash value as of that date of any dividend additions and the amount of any dividend accumulations with interest to that date and decreased by the amount of any indebtedness to the Society against this policy.

In other words, upon settlement Equitable deducted from the cash surrender value of each policy the amount of outstanding loans plus interest chargeable to that policy, and paid the difference to Watts. The Trustee contends that such deductions constitute a voidable preference in violation of § 547 of the Bankruptcy Code.

Section 547(b) of the Code provides in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ... and

(5) that enables such creditor to receive more than such creditor would receive if—

. . . .

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The central issue in this case revolves around the first two elements listed above, specifically, whether or not a debtor-credi-

tor relationship existed between the parties. An examination of the relevant case law reveals that this issue was settled long ago in *Board of Assessors v. New York Life Insurance Company*, 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597 (1910). That case involved an attempt by the Board of Assessors to tax the insurance company for amounts denominated as outstanding policy loans. Speaking for the Court, Justice Holmes rejected the Board's contention that the loans were credits in the hands of the insurance company, and concluded that no debtor-creditor relationship was established.

In short, the claim of the policyholder on the one side and of the company on the other are brought into an account current by the very act that creates the latter. The so-called liability of the policyholder never exists as a personal liability, it never is a debt, but merely a deduction in account from the sum that the [insurer] ultimately must pay. In settling that account, interest will be computed on the item for the reason that we have mentioned; but the item never could be sued for, any more than any other single item of a mutual account that always shows a balance against the would-be plaintiff. In form it subsists as an item until the settlement, because interest must be charged on it. In substance it is extinct from the beginning, because ... it is a payment, not a loan. 216 U.S. at 522, 30 S.Ct. 386.

A more cogent explanation of this rule is found in *United States v. Sullivan*, 333 F.2d 100 (3rd Cir. 1964), in which the Court stated:

We are of the opinion, however, that the proper characterization of the status of [the insurer] with regard to the policy loan transactions both legally and functionally was that of debtor rather than that of creditor. Under the policy [the insured] not only had the right to elect to cancel the policy and receive its cash surrender value but she also had the right to be granted policy loans to the extent of the cash value. At the time of the two policy loan requests, therefore, [the insur-

er] became specifically obligated to [the insured] to the extent of the amounts demanded. And as to the particular sums themselves, [the insured] was in no way bound or required to repay them, a failure in this regard simply serving to bring about a permanent reduction in the cash surrender value. In this most fundamental sense, therefore, the policy loan disbursements were compulsory advances *pro tanto* of the cash surrender value. 333 F.2d at 112.

The general rule has been described as "seemingly incontrovertible", *Sullivan*, supra at 113, and has been consistently followed in a number of contexts. *Williams v. Union Central Life Insurance Company*, 291 U.S. 170, 54 S.Ct. 348, 78 L.Ed. 711 (1934); *First National Bank v. State Life Insurance Company*, 80 F.2d 499 (5th Cir. 1935); *Carpenter v. Commissioner*, 322 F.2d 733 (3rd Cir. 1963), *cert. denied* 375 U.S. 992, 84 S.Ct. 631, 11 L.Ed.2d 478 (1964); *United States v. Miroff*, 353 F.2d 481 (7th Cir. 1965); *Lee v. Equitable Life Assurance Society*, 56 F.Supp. 362 (E.D.Mo.1944).

The Trustee takes the position that the transactions in question were true loans rather than advance payments of the cash surrender value. He relies not only upon the language in the policies referring to such advances as "loans", but also attempts to show that the advances satisfy the four classical elements of a loan. These elements are, (1) a principal sum, (2) a placing of the sum with a safe borrower, (3) an agreement that interest is to be paid, and (4) a recognition by the recipient of liability for return of the principal amount with accrued interest. See, *Black's Law Dictionary*, "Loans".

The Trustee's argument is without merit. It fails in two respects. First, there was no placing of the principal sum with a "safe" borrower. This element presupposes some discretion on the part of the lender as to whether or not the loan should be made. In the instant case, Equitable had no such discretion. Under the terms of the policies Watts had an absolute right to obtain advances not exceeding the cash value; Equi-

table had no discretion to refuse. Indeed, such discretion is prohibited by law. Code of Virginia § 38.1-397.

The second flaw in the Trustee's argument is that there was, in fact, no recognition of personal liability on the part of Watts. The policies themselves state, "An advance, with any interest due or accrued thereon, shall constitute an indebtedness to the Society *against this policy*." [Emphasis supplied]. Nor do the loan agreements contain any promise by Watts to repay. They state that the advances may be repaid at any time during the life of the policy, and if not so repaid, that upon termination of the policy the indebtedness will be deducted from the cash value. Nothing in the above can be said to constitute a recognition of personal liability.

The Court thus concludes that the transfers in question were not for the benefit of a creditor, nor on account of an antecedent debt and therefore may not be avoided by the Trustee under § 547 of the Code.

Accordingly, it is

ORDERED that the Complaint be, and the same is dismissed.