**MOSE AND GARRISON SISKIN MEMORIAL FOUNDATION, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV–1–83–143.**

United States District Court, E.D. Tennessee, S.D.

Dec. 4, 1984.

William L. Taylor, Jr., Spears, Moore, Rebman & Williams, Chattanooga, Tenn., for plaintiff.

Gregory L. Nelson, Tax Div., Dept. of Justice, Washington, D.C., and John W. Gill, Jr., U.S. Atty., Eastern District of Tennessee, Knoxville, Tenn., for defendant.

MEMORANDUM

MILBURN, District Judge.

This action is for an income tax refund. Jurisdiction has been invoked pursuant to

28 U.S.C. Section 1346(a)(1), and is not in dispute. The action is presently before this Court on cross motions for summary judgment.

## I.

The parties made the following stipulations of facts:

1. The plaintiff, Mose and Garrison Siskin Memorial Foundation, Inc., is a Tennessee not-for-profit corporation and tax-exempt organization that operates a rehabilitation facility and school for handicapped individuals. Plaintiff has its principal place of business in Chattanooga, Hamilton County, Tennessee.

2. The plaintiff qualifies as a tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code and, as such, normally files annual returns with the Internal Revenue Service without liability for income tax.

3. The officers of the plaintiff during the years 1979 and 1980 were:

William D. Spears, President

Peter T. Cooper, Treasurer

William L. Taylor, Jr., Secretary

4. Contributors to the plaintiff organization frequently donate life insurance policies to the plaintiff and continue to pay the annual premiums. These policies name the plaintiff as beneficiary and are held and controlled by the plaintiff for investment purposes.

5. During the calendar year 1979, the plaintiff owned in excess of 800 life insurance policies issued by various life insurance companies on the lives of in excess of 800 persons. The annual premiums on such life insurance policies were being donated by the original purchasers of such policies. As of February 1, 1979, such life insurance policies had accumulated cash values of approximately $2,292,900.00.

6. During 1979, the plaintiff determined that the investment of the accumulated cash values in the life insurance policies could return a higher yield if withdrawn from the policies and reinvested in marketable securities and other forms of income paying investments. The accumulated cash values were withdrawn and so reinvested on various dates in 1979 (the enumeration of which is not material to the issues). The reinvested cash values earned $134,501.00, net, of life insurance company charges for such withdrawals, during the calendar year 1979.

7. The purpose of the plaintiff's withdrawal of the cash value of these insurance policies and reinvestment of the funds was to gain leverage in the property in order to acquire additional investment, and, accordingly, to earn more than the nominal rate paid under the policies. The plaintiff paid a cost for withdrawing the cash values from the life insurance policies which averaged approximately 5.5% per annum. The plaintiff earned in excess of 10% per annum on the reinvestment of such cash values.

8. During 1979, the plaintiff became aware that the defendant considered the withdrawal of cash value of life insurance and reinvestment thereof as causing unrelated business income for organizations exempt under Section 501(c)(3) of the Internal Revenue Code. This information was announced by the Commissioner of Internal Revenue in Letter Ruling 7918095. Subsequently, Technical Advice memorandum 80–28–002 was published by the defendant's agents setting forth the same position.

The plaintiff caused an Exempt Organization Business Income Tax Return (Form 990–T) for the calendar year 1979 to be prepared and timely filed with the Internal Revenue Service. Such return reflected a tax liability of $42,160.00, which was paid by the plaintiff to the Internal Revenue Service in installments of $21,500.00 on May 15, 1980, and $20,660.00 on August 15, 1980.

9. On March 16, 1981, the plaintiff caused a claim and Amended Exempt Organization Business Income Tax Return to be prepared and filed which sought a refund of the $42,160.00 in income tax. The claim and refund request was disallowed

by the Internal Revenue Service on January 13, 1983.

10. The plaintiff subsequently filed suit asking refund of $42,160.00 of income tax for the calendar year 1979 on March 17, 1983, in the United States District Court for the Eastern District of Tennessee.

11. The plaintiff has no obligation to repay any withdrawals of cash values from the life insurance contracts, but if an insured individual died, the face amount of the policy would be decreased by any previous withdrawals.

12. The plaintiff has no obligation to return any funds withdrawn to the insurance company. If the plaintiff has not returned the funds withdrawn from the cash reserve of a given policy to the insurance company at the time of death of that policy's insured, such policy will have its cash reserve payable on the death of the insured reduced by the amount withdrawn and by the annual charge imposed by the insurance company attendant upon such withdrawal.

13. Plaintiff held the power to surrender any or all of the life insurance policies owned by it and to receive all of the accumulated cash values without charge by the life insurance companies. However, to surrender such life insurance contracts would cause the donors of annual premiums for such policies to reconsider their gifts to plaintiff.

## II.

The plaintiff tax-exempt corporation insists that an advance against a life insurance contract is not an "indebtedness", and that plaintiff's activities sought to be included within 26 U.S.C. Section 514 are not of the character Section 514 was designed to prevent, and, finally, that charges on policy advances are not interest such as to make the advances acquisition indebtedness.

In response the government insists that the income generated by the plaintiff's loans is acquisition indebtedness and that the position of the United States is consistent with the legislative history of 26 U.S.C. Sections 512 and 514.

Therefore, the issue is whether the money obtained from withdrawing the accumulated cash values of insurance policies for which the beneficiary, charitable organization pays an annual fee, but has no obligation to repay, is "acquisition indebtedness" within the meaning of Section 514(c) of the Internal Revenue Code.

## III.

The Internal Revenue Code 26 U.S.C. Section 511 imposes a tax upon all "unrelated business taxable income (as defined in Section 512)" of certain organizations, such as the plaintiff, which are exempt from taxation under Section 501 of the Internal Revenue Code.

The term "unrelated business taxable income" is defined in Section 512 of the Internal Revenue Code to include certain amounts realized by organizations such as the plaintiff. Specifically, Section 512(b)(4) provides that in the case of "debt-financed property" (as defined in Section 514), there shall be included, as an item of gross income derived from an unrelated trade or business, the amount ascertained under Section 514(a)(1). Section 514(a)(1) sets forth the actual method of computation of unrelated business taxable income in situations involving debt-financed property.

"Debt-financed property" is defined in Section 514(b) to include any property which is held to produce income and with respect to which there is an "acquisition indebtedness" at any time during the taxable year.

"Acquisition indebtedness" is defined, in pertinent part, to mean with respect to debt-financed property, the unpaid amount of:

(A) the indebtedness incurred by the organization in acquiring or improving such property;

(B) the indebtedness incurred before the acquisition or improvement of such property if such indebtedness would not have

been incurred but for such acquisition or improvement; ...

26 U.S.C. Section 514(c).

 The plaintiff insists that because there is no obligation to repay the advance, it is not an indebtedness and cites several cases decided over twenty years ago. Although this Court does not believe this precedent to be totally irrelevant or overruled, it is of the opinion that the better view is expressed in the tax court case, *Minnis v. Commissioner,* 71 T.C. 1049 (1979) in which it was held that amounts paid on loans from an insurer against the cash surrender value of life insurance policies, not involving sham transactions, are deductible as interest on indebtedness. The Tax Court in *Minnis* squarely addressed the present problem before this Court and stated the following in relevant part:

It is true that a policy loan differs in some respects from an ordinary loan. The issuer of the policy generally has no discretion as to whether to grant a policy loan and the policyholder has no obligation to repay the loan by a set date. If the policyholder fails to repay the loan, the proceeds payable upon maturity of the policy are reduced accordingly. In this sense, the loan is actually an advance payment and, in some contexts, courts have held that a policy loan does not create a debtor-creditor relationship. See, e.g., *Orleans Parish v. N.Y. Life Ins. Co.,* 216 U.S. 517 [30 S.Ct. 385, 54 L.Ed. 597] (1910) (existence of "property" for purposes of State taxation of the insurance company); *United States v. Miroff,* 353 F.2d 481 (7th Cir.1965), and *United States v. Sullivan,* 333 F.2d 100 (3d Cir.1964) (both involving the existence of a sufficient interest for purposes of a tax lien).

However, for the purposes of determining a taxpayer's Federal income tax liability, policy loans have generally been regarded as a valid form of indebtedness. Despite the insurance company's lack of recourse against the borrower, this Court has repeatedly recognized that interest paid on a policy loan is deductible as interest on indebtedness under section 163. *Salley v. Commissioner,* 55 T.C. [896] at 903; *Kay v. Commissioner,* 44 T.C. 660, 672 (1965); *Dean v. Commissioner,* 35 T.C. 1083, 1085 (1961); *Emmons v. Commissioner,* 31 T.C. 26, 30 (1958), aff'd sub nom. *Weller v. Commissioner,* 270 F.2d 294 (3d Cir.1959). See also *Coors v. United States,* 215 Ct.Cl. 840, 572 F.2d 826 (1978).

71 T.C. at 1054.

Not only has the Tax Court ruled that an advance on a policy is an indebtedness but the policy itself, both in the *Minnis* case and in the instant case, supports this holding. *See* 71 T.C. at 1051. In this case, typical policies are attached as exhibits to the Stipulation of Facts. One such policy states, "The company will grant an advance (herein called a loan) upon the assignment of this policy to the company as the only security, provided a cash value is available ...". The policy goes on to define "loan value", "loan interest", and "loan repayment" by contractual provisions.

In addition, the finding that loans on insurance policies are indebtedness is consistent with the intent and purpose behind Section 514. The House Report accompanying the Tax Reform Act of 1969 states in relevant part:

Certain tax-exempt organizations are now subject to income tax on their "unrelated business income," a concept which includes not only the active conduct of a business but also a portion of rental income from "business leases" measured by the proportion of debt on the realty. Your committee has concluded that it is necessary to increase the effectiveness of this provision in two major respects. The first is to expand "unrelated business income" to include a new category, "unrelated debt-financed income" from investment property, with the portion included measured by the proportion of debt on the investment property. This provision will discourage a developing device for trading in the tax exemption of

nonprofit organizations, which now escapes unrelated business income tax....

In addition to the general problem of unfair competition resulting from the conduct of an unrelated trade or business, social clubs, fraternal beneficiary societies, and voluntary employee beneficiary associations present a special problem with regard to any income from sources outside the membership, whether such income results from the conduct of an unrelated trade or business or *passive investments.*

Consequently, the bill contains two amendments with respect to tax-exempt organizations generally: the so-called Clay-Brown provision which encompasses "debt-financed income" within the scope of "unrelated business income;" and the extension of the unrelated business income tax to additional tax-exempt organizations.

H.Rep. No. 91–413, 91st Cong., 1st Sess., reprinted in 1969 U.S.Code Cong. & Ad. News 1645, at 1689.

In conclusion, it is common knowledge that the exemption granted a charitable organization is narrow and includes the generation of income related only to its tax exempt activities. In this case, plaintiff borrowed money at a low interest rate on numerous donated life insurance policies and reinvested at a higher rate much as a bank or financial institution would do. If our holding were other than it is today, there would be nothing in this case to keep this charity from investing large amounts of proceeds in the proverbial hot dog stand or controlling any other unrelated business. Congress enacted Section 514 to tax unrelated business activity and this Court holds that advances on life insurance policies are "acquisition indebtedness" within the meaning of Section 514(c) of the Internal Revenue Code. Clearly, the potential for abuse is evident. This Court overrules plaintiff's motion for summary judgment and sustains defendant's motion for summary judgment.