**MOSE AND GARRISON SISKIN MEMORIAL FOUNDATION, INC., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 85–5075.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 24, 1986.

Decided May 8, 1986.

William L. Taylor, Jr. (argued), Spears, Moore, Rebman & Williams, Chattanooga, Tenn., Mark Allen Ramsey, for plaintiff-appellant.

Raymond W. Hepper (argued), John W. Gill, U.S. Atty., Chattanooga, Tenn., Robert E. Rice, Tax Div., Dept. of Justice, Washington, D.C., Michael L. Paup, Glenn L. Archer, Jr., Robert A. Bernstein, for defendant-appellee.

Before ENGEL, KENNEDY and RYAN, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

This appeal presents the question whether the Internal Revenue Code's ("I.R.C.") "unrelated business income" provisions apply to income that a charitable organization derives by withdrawing the accumulated cash value of life insurance policies that the charitable organization owns and reinvesting the proceeds in marketable securities and other income paying investments. The District Court held that since the proceeds from the withdrawals against the accumulated cash value are "acquisition indebtedness" under I.R.C. § 514(c), the unrelated business income provisions apply. *Mose and Garrison Siskin Memorial Foundation, Inc. v. United States,* 603 F.Supp. 91 (E.D.Tenn.1984). For the reasons set forth below, we affirm.

Plaintiff-appellant, the Mose and Garrison Siskin Memorial Foundation, Inc. ("the Foundation"), a I.R.C. § 501(c)(3) tax-exempt organization, timely filed its 1979 Form 990–T, exempt organization business income tax return, reporting unrelated business taxable income of $134,501. The Foundation earned this income by withdrawing the accumulated cash value of approximately 800 life insurance policies that the Foundation owned and reinvesting the proceeds in marketable securities and other income producing investments. The Foundation's Form 990–T reflected a tax liability of $42,160, which the Foundation paid to the Internal Revenue Service in installments of $21,500 on May 15, 1980 and $20,660 on August 15, 1980. On March 16, 1981, the Foundation filed an amended return, seeking the refund of the entire amount of unrelated business income tax paid, claiming the income was not taxable. The IRS disallowed the claim on January 13, 1983. Subsequently, the Foundation instituted this 28 U.S.C. § 1346(a)(1) action in the United States District Court for the Eastern District of Tennessee to recover the $42,160 in unrelated business income taxes that the Foundation had paid for the 1979 calendar year. Based on a joint stipulation of facts, the parties filed cross-motions for summary judgment. On December 4, 1984, the District Court entered an order overruling the Foundation's motion for summary judgment, sustaining the defendant's motion for summary judgment, and dismissing the case.

The Foundation, a Tennessee not-for-profit corporation, operates a rehabilitation facility and school for handicapped individuals. Contributors to the Foundation frequently donate life insurance policies, which name the Foundation as beneficiary. The Foundation holds these policies for investment purposes, while the contributors continue to pay the annual premiums. During 1979, the Foundation owned more than 800 life insurance policies covering the lives of more than 800 people. As of February 1, 1979, the life insurance policies had accumulated cash value of approximately $2,292,900. During 1979, the Foundation's officers decided that the investment in the life insurance policies could produce a higher yield if the Foundation withdrew the policies' accumulated cash value and reinvested the proceeds in marketable securities and other income producing investments. Accordingly, the Foundation withdrew the accumulated cash value and reinvested the proceeds. The Foundation paid a cost for withdrawing the cash value which averaged approximately five and a half percent per year. The Foundation, however, earned in excess of ten percent per year on the reinvestment of the proceeds. Accordingly, the reinvested proceeds earned $134,501, net of the insurance company charges for such withdrawals, during the 1979 calendar year. Although the Foundation could have surrendered the policies in exchange for the policies' cash surrender values, the donors of annual premiums for such policies would have reconsidered their gifts to the Foundation.

I.R.C. § 501(a) exempts charitable and educational organizations from federal income taxation. The Foundation undisputably qualifies as an "exempt organization" under I.R.C. § 501(c)(3). I.R.C. § 511(a), however, imposes a tax on an exempt organization's "unrelated business taxable income." I.R.C. § 511(a)(2). I.R.C. § 512 defines the term "unrelated business taxable income." As a general rule, I.R.C. § 512(b) excludes passive investment income, such as interest, dividends, and royalties from "unrelated business taxable income." I.R.C. § 512(b)(4), however, negates the ex-

clusion "in the case of debt-financed property (as defined in section 514)." I.R.C. § 514(b) defines the term "debt-financed property" as "any property which is held to produce income and with respect to which there is an acquisition indebtedness (as defined in subsection (c)) at any time during the taxable year ...." With respect to any debt-financed property, I.R.C. § 514(c)(1) defines the term "acquisition indebtedness" as the unpaid amount of:

(A) the indebtedness incurred by the organization in acquiring or improving such property;

(B) the indebtedness incurred before the acquisition or improvement of such property if such indebtedness would not have been incurred but for such acquisition or improvement; and

(C) the indebtedness incurred after the acquisition or improvement of such property if such indebtedness would not have been incurred but for such acquisition or improvement and the incurrence of such indebtedness was reasonably foreseeable at the time of such acquisition or improvement.

Essentially, we face the question whether withdrawals against the accumulated cash value of the life insurance policies are "indebtedness." If the withdrawals are not "indebtedness," there can be no "acquisition indebtedness" and hence no "debt-financed property." If there is no "debt-financed property," I.R.C. § 512(b)(4) would not negate the exclusion of passive investment income from "unrelated business taxable income."

Neither the I.R.C. nor the Treasury Regulations define "indebtedness." The Foundation, however, contends that the withdrawal of the accumulated cash value of a life insurance policy does not create "indebtedness." The Foundation argues that the withdrawals were not "loans" but rather "advances" of funds that the insurance companies would ultimately pay, in any event, to the Foundation. The Foundation contends that the "advances" did not create a debtor-creditor relationship because the Foundation did not have an obligation

to repay the insurance companies. The Foundation further contends that the "loan interest" amounts paid the insurance companies were not "interest" but rather "charges" to maintain the face values of each insurance policy.

We conclude, however, that the withdrawals against the cash value of the policies are "indebtedness." Although the "typical" life insurance policy [1] labels a withdrawal against the cash value of the policy as a "loan," the policy describes such a withdrawal as "an advance (herein called a loan)." The "typical" life insurance policy, however, also uses such terms as "loan value," "loan interest," "indebtedness," and "loan repayment." Admittedly, the withdrawal against the accumulated cash value of a life insurance policy differs from an ordinary loan. *See, e.g., Board Assessors v. New York Life Insurance Company,* 216 U.S. 517, 522–23, 30 S.Ct. 385, 385–86, 54 L.Ed. 597 (1910); *Williams v. Union Central Life Insurance Company,* 291 U.S. 170, 179–80, 54 S.Ct. 348, 351–52, 78 L.Ed. 711 (1934). Nevertheless, in *Salley v. Commissioner,* 55 T.C. 896, 903 (1971), *aff'd,* 464 F.2d 479 (5th Cir.1972), while holding that the taxpayers could deduct, under I.R.C. § 163(a), the interest on loans attributable to the accumulated cash value of life insurance policies, the Tax Court stated:

> The obligation on a life insurance policy loan is unique in the sense that the borrower assumes no personal liability, and the insurance company looks only to the cash surrender values for repayment of the loans. Nevertheless, this Court has recognized that the borrower becomes obligated in a sense to pay interest, and such obligation is sufficient to support a deduction for income tax purposes.

I.R.C. § 163(a) (emphasis added) allows a deduction for "all interest paid or accrued within the taxable year on *indebtedness.*" Furthermore, in *Minnis v. Commissioner,* 71 T.C. 1049, 1054 (1979), a case involving an annuity contract, the Tax Court stated "policy loans have generally been regarded as a valid form of indebtedness."

In addition, we note that in the Revenue Act of 1964, Pub.L. No. 88–272, § 215, 78 Stat. 19, 55 (1964), Congress amended I.R.C. § 264 to disallow a deduction for amounts paid or accrued on indebtedness incurred or continued to purchase or carry a life insurance policy under a financing arrangement that contemplates the systematic borrowing of part or all of the increases in the cash value of the policy. Al-

---

**1.** As an addendum to the stipulation of facts that the parties filed in the District Court, the parties attached a "typical" life insurance policy. The policy, which the parties agree contains the standard terms and conditions representative of the other policies involved in this case, provides as follows:

LOAN PROVISION

POLICY LOAN. The Company will grant an advance (herein called a loan) upon the assignment of this policy to the Company as the only security, provided a Cash Value is available and provided this policy is not being continued as Extended Term insurance. Such assignment must be written and satisfactory to the Company.

The Company may defer the making of any loan, other than to pay premiums on policies in the Company, for a period not to exceed six months after a request therefor is received by the Company.

LOAN VALUE. A loan may be made in an amount which, with interest at the rate of 5% per year, will not exceed the Cash Value of this policy at the date to which premiums due have been paid or at the next policy anniver-

sary if no more premiums are payable under the terms of this policy.

LOAN INTEREST. Loan interest will accrue daily at the rate of 5% per year and will become a part of the indebtedness as and when it accrues. Such interest will be payable on each policy anniversary and on the date the loan is settled. If the interest is not paid when due, it will then be added to the loan and will bear interest at the same rate.

LOAN REPAYMENT. Repayment of a loan may be made in full or in part at any time before this policy terminates for any reason....

Any indebtedness will be deducted:

1. From the amount otherwise payable at death, or

2. Upon payment or application of the Cash Value.

If at any time the indebtedness equals or exceeds the Cash Value, this policy will terminate and have no further value 31 days after notice has been mailed by the Company to the last known addresses of the Owner and any assignee of record with the Company.

**484**

though Congress intended to eliminate the interest deduction on insurance loans when used as a "tax-saving device," the legislative history explicitly acknowledges the desire to preserve the interest deduction on insurance loans in other situations. The House Report stated:

> Your committee recognizes, however, the importance of being able to borrow on insurance policies; and, therefore, while adopting a provision designed at minimizing the sale of insurance as a tax-saving device, it has been careful in this provision to provide for the retention of rights to borrow on insurance for other than tax-saving purposes without the loss of the interest deduction.

H.R.Rep. No. 749, 88th Cong., 2 Sess., *reprinted in* 1964 U.S. Code Cong. & Ad. News 1313, 1370. *See also* S.Rep.No. 830, 88th Cong., 2d Sess., *reprinted in* 1964 U.S.Code Cong. & Ad.News 1673, 1750. Since Congress intended to preserve the interest deduction for payments on insurance loans, Congress implicitly considers withdrawals against the accumulated cash value of life insurance policies as "indebtedness" because without "indebtedness" a taxpayer cannot qualify for an interest deduction. Consequently, we hold that the withdrawals against the cash value of the life insurance policies involved in this case created "acquisition indebtedness" under I.R.C. § 514(c)(1).

Accordingly, we affirm the District Court's order overruling the Foundation's motion for summary judgment, sustaining the defendant's motion for summary judgment, and dismissing the action.