United States Court of Appeals,

Fifth Circuit.

No. 94-41125.

SOUTHWEST TEXAS ELECTRICAL COOPERATIVE, INC., Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Oct. 19, 1995.

Appeal from the United States Tax Court.

Before SMITH, BARKSDALE and BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Southwest Texas Electrical Cooperative, Inc. ("petitioner"), received a low-interest federal loan to finance an improvement of its facilities. At the time of construction, petitioner needed and withdrew only one-half of the approved loan amount; it later withdrew the remainder, however, and invested it in Treasury Notes. The Tax Court found that interest income from the Treasury Notes is debt-financed and therefore subject to federal taxation. We affirm.

I.

Petitioner, a tax-exempt rural electrical cooperative, received a $5.148 million loan from the Rural Electrification Administration ("REA") to finance an expansion and upgrade of its facilities. The REA permitted petitioner to draw on the approved loan funds only as reimbursement for construction costs it had already incurred. Petitioner made six REA loan draws from

1

September 1983 through June 1985, totaling $2.574 million.[1] Although petitioner was entitled to withdraw the remaining $2.574 million by July 1986, it chose not to do so, in part because its financial condition had improved and in part because further debt would have had a negative effect on its financial indicators.

The REA notified petitioner in March 1989 that its eligibility for the remaining approved funds would expire in August 1989. Petitioner requested the $2.574 million in early May 1989 and received it on May 16, 1989, at an interest rate of five percent. Petitioner's motivations for borrowing the funds included uncertainty over whether it could receive another REA loan and the costs it had already incurred in applying for the loan. Petitioner placed the borrowed funds in its General Fund Account on May 17, 1989, and withdrew $2,575,735.25 from that account the next day to purchase two United States Treasury Notes paying more than nine percent interest.

Petitioner received interest income on the Treasury Notes in the amount of $146,096.61 in 1989 and $230,938.49 in 1990. It also incurred related expenses (including interest payments on the REA loan) of $86,222.29 in 1989 and $134,812.53 in 1990. Petitioner reported that it had no taxable income in 1989 and 1990; the Commissioner of Internal Revenue ("the Commissioner") disagreed and assessed deficiencies for those years, contending that the interest income from the Treasury Notes, less related expenses, is taxable

---

[1]Petitioner also received a concurrent loan from the National Rural Utilities Cooperative Finance Corporation ("CFC") and drew $601,900 on the CFC loan in July and September 1985.

as business income unrelated to petitioner's tax-exempt purpose. The Tax Court upheld the deficiencies.

II.

A.

The parties agree that (1) petitioner is generally exempt from federal income tax under 26 U.S.C. § 501(a);  (2) 26 U.S.C. §§ 501(b) and 511(a) require petitioner to pay taxes on its "unrelated business taxable income";  and (3) interest income counts as "unrelated business taxable income" when it is both earned on property that is not substantially related to petitioner's tax exempt purpose, *see* 26 U.S.C. §§ 512(a)(1) and 513(a), and debt-financed.  *See* 26 U.S.C. §§ 512(b)(4) & 514(a).  The parties further agree that the improvement of petitioner's facilities is substantially related to its tax-exempt purpose, and the purchase of Treasury Notes is not.  Accordingly, the question presented is whether the $2.574 million in debt financing should be attributed to the facilities or to the purchase of the Treasury Notes.

Petitioner contends that the debt financing should be attributed to the facilities.  The REA approved the loan for the sole purpose of financing construction.  Under the terms of the loan agreement, petitioner expended general operating funds for the construction and received corresponding reimbursement from the REA. Petitioner argues that the legislative history of 26 U.S.C. § 514 evidences an intent to permit non-profit organizations to make tax-free investments with their own funds, taxing passive investments only when they are made with borrowed funds.  Because

3

the REA releases funds only upon proof of completed construction, taxing investments made with general funds only because those funds have been replenished by REA loans could have the effect of taxing investments that Congress intended to exempt.

The Commissioner conceded at oral argument that the REA loan proceeds would be attributable to the construction and not the Treasury Notes if petitioner had drawn on the loan proceeds at the time of construction. The Commissioner argues that petitioner lost this tax advantage by its lengthy delay in drawing on the loan, however. Other circuits have found that § 514 taxes income from a passive investment when a taxpayer borrows money for the purpose of making such an investment; the Commissioner argues that this case falls within those holdings because petitioner made the loan draw three and one-half years after completing construction and immediately invested the proceeds in Treasury Notes.

B.

We review the Tax Court's legal conclusions *de novo.* We defer to its fact findings unless they are clearly erroneous. *Estate of Clayton v. Commissioner,* 976 F.2d 1486, 1490 (5th Cir.1992).

This is a case of first impression. While other circuits have held or assumed that indebtedness incurred for the purpose of making passive investments is attributable to those investments,[2]

---

[2]*See, e.g., Kern County Elec. Pension Fund v. Commissioner,* 96 T.C. 845, 1991 WL 106265 (1991), *aff'd,* 988 F.2d 120 (9th Cir.1993); *Mose & Garrison Siskin Memorial Found., Inc. v. United States,* 790 F.2d 480 (6th Cir.1986); *Elliot Knitwear Profit Sharing Plan v. Commissioner,* 614 F.2d 347 (3d Cir.1980).

4

reimbursement loans arguably present a different question. The parties agree that a taxpayer that receives loan funds before incurring construction expenditures can use the loan proceeds to finance construction directly while simultaneously investing its own money tax-free; a similar taxpayer that receives loan funds only after incurring construction expenditures must use its own money to pay construction bills and then use the reimbursement funds for the investment. If we were to hold broadly that the latter investment is debt-financed *merely* because the specific dollars used to make it are traceable to a lender, we would grant different tax consequences to similar transactions.

C.

We need not resolve the difficulties presented by reimbursement loans, however, because petitioner's arguments amount to an attempt to restructure this transaction after the fact. As noted above, petitioner's Treasury Notes are subject to federal taxation only if they are debt-financed. Property is debt-financed if it is held to produce income and there is an "acquisition indebtedness" attributable to it. *See* 26 U.S.C. § 514(b)(1). "Acquisition indebtedness" is defined as follows:

> [T]he term "acquisition indebtedness" means, with respect to any debt-financed property, the unpaid amount of—
>
> > (A) the indebtedness incurred by the organization in acquiring or improving such property;
> >
> > (B) the indebtedness incurred before the acquisition or improvement of such property if such indebtedness would not have been incurred but for such acquisition or improvement; and
> >
> > (C) the indebtedness incurred after the acquisition or

5

improvement of such property if such indebtedness would not have been incurred but for such acquisition or improvement and the incurrence of such indebtedness was reasonably foreseeable at the time of such acquisition or improvement.

26 U.S.C. § 514(c)(1).

Petitioner made a business decision to finance the remaining construction by spending its own funds, not by drawing on the remainder of the approved loan; petitioner subsequently decided to borrow the remainder and invest it in Treasury Notes. Accordingly, petitioner incurred the indebtedness not for financing the construction, but for making arbitrage profits on federal lending and borrowing rates.

Petitioner contends that § 514(c)(1)(C) attributes the indebtedness to the facilities because petitioner would not have been eligible for the loan but for the construction. Although petitioner is correct that the indebtedness *could not* have been incurred but for the construction, it does not follow that the indebtedness "*would not* have been incurred but for" the construction. *See* § 514(c)(1)(C) (emphasis added). In fact, the record shows that petitioner not only would not have incurred the debt for the construction, but that in fact it did not.[3]

Conversely, the indebtedness must be attributed to the Treasury Notes, as it "would not have been incurred but for such

_____

[3]The Commissioner further argues that the indebtedness cannot be attributed to the facilities under § 514(c)(1) because (1) that subsection applies only to debt-financed property; and (2) the electrical facilities are substantially related to petitioner's tax-exempt functions, so § 514(b)(1)(A)(i) therefore excludes them from the definition of debt-financed property. We do not reach this argument.

acquisition." *See* § 514(c)(1)(B). Petitioner argues that because its primary motivation for taking the loan was to secure financing for future (and presumably tax-exempt) monetary needs, purchase of the Treasury Notes was not a "but for" cause of the indebtedness. Petitioner concedes that it drew on the loan only after deciding to invest the proceeds in Treasury Notes, however. Petitioner's additional motivations are irrelevant, as it incurred indebtedness with the intention of immediately investing it in Treasury Notes.

Petitioner's further contention that the Treasury Notes were purchased from general funds, not indebtedness, is unavailing. Petitioner cannot evade taxes by depositing funds in a bank account before forwarding them to their intended use. *See* 26 C.F.R. § 1.514(c)-1(a)(2) (example 2) (providing that when working capital is reduced by a non-exempt investment, any indebtedness needed to restore working capital to the amount necessary to conduct tax-exempt operations is attributed to the non-exempt investment).[4]

III.

Years after deciding that its construction projects did not require further federal financing, petitioner received federal funds at five percent interest and immediately invested it for more than nine percent interest. While such arbitrage is an excellent business opportunity, it is not exempt from federal taxation.

The decision of the Tax Court is AFFIRMED.

---

[4]Petitioner argues that it needed the loan proceeds to restore necessary working capital. This claim is belied by the fact that petitioner invested the proceeds in Treasury Notes two days after receiving them and still holds the Notes.

7