# United States Court of Appeals for the Federal Circuit

---

**THE HENRY E. AND NANCY HORTON BARTELS TRUST FOR THE BENEFIT OF CORNELL UNIVERSITY,** BY **KENNETH G. BARTELS, JOHN B. LOEHMANN, PHILIP H. BARTELS, INGE T. REICHENBACH,** AND **JOHN F. MURPHY, TRUSTEES,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2009-5122

---

Appeal from the from the United States Court of Federal Claims in 03-CV-2526, Judge Lawrence J. Block.

---

Decided: September 7, 2010

---

PHILIP H. BARTELS, Shipman & Goodwin LLP, of Greenwich, Connecticut, argued for plaintiff-appellant.

JENNIFER M. RUBIN, Trial Attorney, Appellate Section, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With

her on the brief were JOHN A. DICICCO, Acting Assistant Attorney General, and KENNETH L. GREENE, Attorney.

———————————

Before PROST, MAYER, and SCHALL, *Circuit Judges.*

PROST, *Circuit Judge.*

This is a tax refund suit. It was filed by a taxpayer that qualifies as a tax-exempt organization under I.R.C. § 501(c), The Henry E. and Nancy Horton Bartels Trust for the Benefit of Cornell University ("Cornell Trust" or "Trust"). As the name suggests, the Trust was formed to financially support Cornell University. We must decide whether this tax-exempt organization owed unrelated business income tax ("UBIT") on income resulting from the sale of securities it purchased on margin. After paying the UBIT, the Trust filed this refund claim in the United States Court of Federal Claims. The Court of Federal Claims denied the claim, concluding that the proceeds from the margin-financed trades were taxable as income from debt-financed property and thus income from an unrelated trade or business, which is subject to the UBIT. I.R.C. §§ 512(b)(4), 514.

The Trust now appeals. Before this court, the Trust argues that the Court of Federal Claims misinterpreted the relevant provisions of the Internal Revenue Code ("Code" or "tax code"). Because we agree with the trial court that securities purchased on margin are "debt-financed property," and thus "unrelated business taxable income" within the meaning of I.R.C. § 512 and § 514, we affirm.

BACKGROUND

The relevant facts are simple and undisputed. The taxpayer is a trust that was formed to support Cornell University. Shortly after its formation, the Internal Revenue Service ("IRS") granted the Trust's application for tax-exempt status under I.R.C. § 501(c)(3).

This case arises from some of the Trust's investment activities during the 1999 and 2000 tax years. During those years, the Trust invested in stocks purchased "on margin." In other words, the Trust used money borrowed from its broker to complete the stock purchases. The Trust subsequently sold the stocks.

When the Trust filed its "Exempt Organization Business Income Tax Return" for the 1999 tax year, otherwise known as its Form 990T, the Trust reported the income from the sale of the margin-financed securities as capital gains, without reporting any associated income tax liability. After an IRS audit, the Trust paid $48,770 in taxes on the margin sales for the 1999 tax year. For the 2000 tax year, the Trust reported income from the sale of the margin-financed securities as capital gains and paid the associated UBIT of $39,479.

The Trust subsequently filed amended Forms 990T for the 1999 and 2000 tax years. These forms claimed a total refund of $88,249 for UBIT payments made by the Trust on the sale of the margin-financed securities. After the IRS denied the refund claims, the Trust filed this suit in the Court of Federal Claims.

Both parties moved for summary judgment. In a clear, thorough, and insightful opinion, the Court of Federal Claims granted the government's motion. It

ruled that the Trust's income from securities purchased on margin was by definition unrelated business taxable income under I.R.C. § 514. The Trust timely appealed.

We have jurisdiction under 28 U.S.C. § 1295(a)(3).

ANALYSIS

We review grants of summary judgment by the Court of Federal Claims without deference. *CNG Transmission Mgmt. VEBA v. United States*, 588 F.3d 1376, 1378 (Fed. Cir. 2009). Questions of law, such as the proper interpretation of a statute, are reviewed de novo. *Consolidation Coal Co. v. United States*, 528 F.3d 1344, 1347 (Fed. Cir. 2008). Here, the only issue in dispute is the proper interpretation of "unrelated business taxable income."

Organizations otherwise exempt from federal taxation pursuant to § 501(c) remain subject to tax on their "unrelated business taxable income." I.R.C. § 511(a). Unrelated business taxable income is generally defined as "the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the modifications provided in subsection (b)." *Id.* § 512(a)(1). Section 513 defines "unrelated trade or business" to include "any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501." *Id.* § 513(a). The related Treasury Regulation further explains that a trade or business is "related

to exempt purposes, in the relevant sense, only where the conduct of the business activities has a causal relationship to the achievement of exempt purposes (other than through the production of income)." 26 C.F.R. § 1.513-1(d)(2).

This case turns on I.R.C. § 514 and § 512(b)(4), which modify the computation of "unrelated business taxable income" under § 512(a)(1) when income is from a particular source, namely "debt-financed property." *See* I.R.C. §§ 512(b)(4), 514(a). As relevant here, § 514 provides that "[t]here *shall be included* with respect to each debt-financed property . . . an item of gross income derived from an unrelated trade or business." *Id.* § 514(a)(1) (emphasis added). Moreover, § 512(b)(4) requires that "in the case of debt-financed property (as defined in section 514) there *shall be included*, as an item of gross income derived from an unrelated trade or business, the amount ascertained under section 514(a)(1), and there shall be allowed, as a deduction, the amount ascertained under section 514(a)(2)." *Id.* § 512(b)(4) (emphasis added). "Debt-financed property" is defined as "any property which is held to produce income and with respect to which there is an acquisition indebtedness (as defined in subsection (c)) at any time during the taxable year." *Id.* § 514(b)(1); *see also* 26 C.F.R. § 1.514(b)-1(a).[1] In other words, § 512(b)(4) and § 514(a) together define an additional category of unrelated business taxable income, debt-financed property, which is accordingly subject to the

---

[1] Debt-financed property does not include "any property substantially all the use of which is substantially related (aside from the need of the organization for income or funds) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501." I.R.C. § 514(b)(1)(A)(i).

UBIT. For items within this category, § 514 nullifies § 512(b)'s general exemption of dividends, interest, royalties, and the like from the UBIT. *See id.* § 512(b)(4); *Henry E. & Nancy Horton Bartels Trust for the Benefit of the University of New Haven v. United States* (*Bartels Trust for New Haven*), 209 F.3d 147, 150-51 (2d Cir. 2000); *Kern Cnty. Elec. Pension Fund v. Comm'r*, 96 T.C. 845, 850-51 (1991).

As used in § 514, "acquisition indebtedness" means "the unpaid amount of . . . indebtedness incurred by the organization in acquiring or improving [debt-financed property]." I.R.C. § 514(c)(1)(A). Acquisition indebtedness does not include "indebtedness the incurrence of which is inherent in the performance or exercise of the purpose or function constituting the basis of the organization's exemption, such as the indebtedness incurred by a credit union described in section 501(c)(14) in accepting deposits from its members." *Id.* § 514(c)(4).

On appeal, the crux of the dispute is whether the Trust's income from its securities purchased on margin is subject to the UBIT. The Trust argues that the UBIT does not apply because: (1) doing so is contrary to congressional intent; and (2) investing in securities is not a "trade or business" under the tax code.

For the following reasons, we reject these arguments. The language of § 512(b)(4) and § 514 is plain and unambiguous. It is undisputed that to purchase securities on margin, the Trust borrowed funds. "[I]ndebtedness [was thus] incurred by the organization in acquiring" these securities. *Id.* § 514(c)(1). Accordingly, under § 514(c), these securities were subject to acquisition indebtedness and constitute "debt-financed property" within the meaning of § 514(b)(1). *See Bartels Trust for New Haven*, 209

F.3d at 150-51; *Mose & Garrison Siskin Mem. Found., Inc. v. United States*, 790 F.2d 480, 483-84 (6th Cir. 1986); *Elliot Knitwear Profit Sharing Plan v. Comm'r*, 614 F.2d 347, 350-51 (3d Cir. 1980). As the Court of Federal Claims correctly recognized, § 514(a) and § 512(b)(4) treat income the Trust derived from selling these securities as "an item of gross income derived from an unrelated trade or business," and therefore unrelated business taxable income under § 512.

### 1. The Statute and Congressional Intent

Notwithstanding the clear language of § 514 and its straightforward application to these facts, the Trust argues that the UBIT requires a showing of unfair competition because Congress's "sole" purpose in enacting the UBIT was to prevent tax-exempt organizations from gaining an unfair competitive advantage over taxable entities.

We are not persuaded. To determine Congress's intent, we begin with the text of the statute. *Sharp v. United States*, 580 F.3d 1324, 1237 (Fed. Cir. 2009). When a statute's language is plain, our sole function is to enforce the statute according to its terms. *Id.*; *see also Jimenez v. Quarterman*, 129 S. Ct. 681, 685 (2009); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). Here, Congress intended to impose the UBIT on all debt-financed property, regardless of whether that particular type of property was a source of unfair competition. This intent is evident on the statute's face: "There *shall be included* with respect to each debt-financed property . . . an item of gross income derived from an unrelated trade or business." I.R.C. § 514(a)(1); *see also id.* § 512(b)(4). Nothing in § 512 or § 514 premises application of the UBIT on showing unfair competi-

tion.  *See Bartels Trust for New Haven*, 209 F.3d at 151-52.

In arguing that one of the purposes motivating enactment of the UBIT trumps the statutory text, the Trust improperly elevates an interpretive tool to a command. *See Garcia v. United States*, 469 U.S. 70, 74 (1984); *Bull v. United States*, 479 F.3d 1365, 1376 (recognizing that "[b]eyond the statute's text, the traditional tools of statutory construction include the statute's structure, canons of statutory construction, and legislative history" (alterations omitted)).  While our decisions recognize that legislative history can shed light on congressional intent, we have never held that legislative history trumps clear text. *See, e.g., Sharp*, 580 F.3d at 1238; *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 396 (Fed. Cir. 1990); *see also Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1354 (Fed. Cir. 2006).  Rather, we must presume that Congress says in statute what it means and means in a statute what it says. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).

We think our inquiry thus begins and ends with what § 514 does (and does not) say. *Id.*  However, even if we were to examine the legislative history of the UBIT, there is no "extraordinary showing" of a "clear intent contrary to the [statute's] plain meaning." *Glaxo Operations UK*, 894 F.2d at 396.

We agree with the Second and Third Circuits that the legislative history supports a literal reading of the statute. *See Bartels Trust for New Haven*, 209 F.3d at 153-54; *Elliot Knitwear*, 614 F.2d at 350-51; *Kern Cnty.*, 96 T.C. at 851.  As originally enacted, § 514 extended the UBIT only to income from borrowed funds used to finance the purchase of real property. *See* I.R.C. § 514(b)(3)(A) (1968).  In

1969, Congress amended § 514. *See* Tax Reform Act of 1969, No. 91-172, 83 Stat. 487. The amendment broadened § 514's scope beyond business leases, making the UBIT applicable to all income resulting from property subject to acquisition indebtedness, i.e., "debt-financed property." Far from evincing an intent to limit the reach of the UBIT, the legislative history of § 514 supports our conclusion that "debt-financed property" should be given its plain meaning.

The Trust cites numerous cases in support of its contention that the sole purpose of the UBIT was eliminating unfair competition. *See, e.g.*, *Portland Golf Club v. Comm'r*, 497 U.S. 154, 161-62 (1990); *United States v. Am. College of Physicians* 475 U.S. 834, 837-38 (1986); *United States v. Am. Bar Endowment*, 477 U.S. 105, 114 (1986). The Trust is correct that these decisions recognize that the primary, if not sole, objective for adopting the UBIT "was to eliminate a source of unfair competition by placing the unrelated business activities of certain exempt organizations upon the same tax basis as the nonexempt business endeavors with which they compete." 26 C.F.R. § 1.513-1(b). These decisions, however, do not resolve the question presented here: None hold that a showing of unfair competition is required for imposing the UBIT, particularly for debt-financed property. *See Bartels Trust for New Haven*, 209 F.3d at 153; *State Police Ass'n v. Comm'r*, 125 F.3d 1, 8 (1st Cir. 1997) (holding that the UBIT does not necessarily require a showing of actual competition); *Fraternal Order of Police, Ill. State Troopers, Lodge No. 41 v. Comm'r*, 833 F.2d 717, 722-23 (7th Cir. 1987); *Clarence LaBelle Post No. 217, Vets. of Foreign Wars of the U.S. v. United States*, 580 F.2d 270, 272 (8th Cir. 1978). Though unfair competition may have been among Congress's concerns in establishing the UBIT, what matters is that the statutory provisions

Congress enacted used broader terms, which do not limit the UBIT to situations involving unfair competition. We do not agree that upholding application of the UBIT to the Trust's income from its margin-financed securities defeats or compromises the purpose of the relevant statutes. *See* I.R.C. §§ 511-514. To the contrary, the plain language of these sections makes clear that Congress intended otherwise tax-exempt organizations to still pay taxes on certain income, namely, what the tax code defines as "unrelated business taxable income." *See id.*

The Trust's reliance on cases like *Gregory v. Helvering*, 293 U.S. 465, 470 (1935), *Jade Trading, LLC ex rel. Ervin v. United States*, 598 F.3d 1372 (Fed. Cir. 2010), and *Coltec Industries, Inc. v. United States* is similarly unavailing.[2] For example, *Jade Trading* and *Coltec Industries* disallowed certain tax benefits under the economic substance doctrine. The doctrine disregards for tax purposes transactions that comply with the literal terms of the tax code but lack economic reality in order to prevent taxpayers from subverting the legislative purpose of the Code. *Coltec*, 454 F.3d at 1352; *see also Tank Truck Rentals v. Comm'r*, 356 U.S. 30, 35 (1958). This case differs in every respect that matters. Here the taxpayer seeks to avoid a tax (rather than obtain a tax benefit) by arguing that the tax code should *not* be read literally

---

[2] These cases accord with the general interpretive rule that deductions and other tax benefits are construed narrowly because they are a matter of legislative grace; they are exceptions to the general rule that all income is taxable. I.R.C. § 61; *see Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1375 (Fed. Cir. 2010). This interpretive rule does not apply here because we are concerned with the applicability of a tax, not the availability of a tax benefit.

(rather than arguing for a literal reading) to effectuate the Code's purpose.  We decline to extend the economic substance doctrine.  The doctrine is a judicial tool for enforcing the Code, not a judicial tool for negating its application.  *Coltec*, 454 F.3d at 1352.

## 2.  Unrelated Trade or Business

The Trust also argues that the UBIT does not apply because its investment activities do not constitute a "trade or business."

The Trust is correct that only income from an "unrelated trade or business" is subject to the UBIT.  I.R.C. § 512(a)(1).  Section 513 generally defines "unrelated trade or business" as (1) any trade or business (2) regularly carried on by the organization (3) the conduct of which is not substantially related (aside from the production of funds) to the organization's performance of its exempt functions.  *Id.* § 513(a); 26 C.F.R. § 1.513-1(a); *Am. College of Physicians*, 475 U.S. at 838-39.  According to the Trust, the first requirement is not met because investing in securities is not a "trade or business" since the investments do not meet the definition of "trade or business" in I.R.C. § 162, which § 513 incorporates by reference.  26 C.F.R. § 1.513-1(b); *see  Am. Bar Endowment*, 477 U.S. at 110; *Disabled Am. Veterans v. United States*, 650 F.2d 1178, 1186-87 (Ct. Cl. 1981); *La. Credit Union League v. United States*, 693 F.2d 525, 530 (5th Cir. 1982).

We reject this argument and instead agree with the Second Circuit that it does not matter whether the Trust's investments in securities on margin satisfy the definition of "unrelated trade or business" in § 513 because separate provisions—§  512(b)(4)  and  § 514—explicitly classify income from debt-financed property as income from an

unrelated trade or business. I.R.C. §§ 512(a)(1), 512(b)(4), 514(a); *see Bartels Trust for New Haven*, 209 F.3d at 151.

### CONCLUSION

The judgment of the Court of Federal Claims is affirmed. We join our sister circuits in holding that the securities purchased on margin by otherwise tax-exempt organizations are debt-financed property, the income from which is subject to the UBIT. I.R.C. §§ 512, 514; *Bartels Trust for New Haven*, 209 F.3d at 150-51; *Elliot Knitwear*, 614 F.2d at 350-51; *Sw. Tx. Elec. Co-op., Inc. v. Comm'r*, 67 F.3d 87, 89-90 (5th Cir. 1997); *Mose & Garrison Siskin*, 790 F.2d at 483-84.

**AFFIRMED**